Divya S. Gupta (SBN 284282)
*gupta.divya@dorsey.com*
**DORSEY & WHITNEY LLP**
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: (714) 800-1400; Fax: (714) 800-1499

Michelle S. Grant*
*grant.michelle@dorsey.com*
**DORSEY & WHITNEY LLP**
50 S. 6th Street, #1500
Minneapolis, MN, 55402
Tel: (612) 340-2600; Fax: (612) 340-2868

Attorneys for Defendants UnitedHealth Group
Incorporated; United Healthcare Services, Inc.;
United Healthcare Insurance Company; UHC of
California; United Healthcare Service LLC;
United Behavioral Health, Inc.; OptumInsight, Inc.;
Optum Services, Inc.; and Optum, Inc.

*Admitted Pro Hac Vice*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DR RECOVERY ENCINITAS, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UHC OF CALIFORNIA, UNITED HEALTHCARE SERVICE LLC, UNITED BEHAVIORAL HEALTH, INC., OPTUMINSIGHT, INC., OPTUM SERVICES, INC. OPTUM, INC., VIANT, INC., MULTIPLAN, INC. and Does 1 through 25, inclusive,<br><br>Defendants. | Case No. 8:19-cv-02075-JVS-DFM<br><br>Assigned for all purposes to:<br>Hon. James V. Selna<br>Courtroom: 10C<br><br>[Superior Court of the State of California, County of Orange, Case No. 30-2019 01099689-CU-BC-CJC]<br><br>**UNITED DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  February 24, 2020<br>Time: 1:30 pm<br>Courtroom:  10C<br><br>Date Action Filed: October 31, 2019<br>Trial Date:  None Set |

1

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................... 1

II.   Factual Background ....................................................................................... 2

III.  Argument ...................................................................................................... 3

    A.     ERISA PREEMPTS PLAINTIFF'S STATE LAW CLAIMS ............ 4

          1.     ERISA Preempts Plaintiff's Contract Claims (Counts I-IV) ........................................................................................ 5

                a.     Breach of Written Contract (Count I) ............................. 5

                b.     Good Faith and Fair Dealing (Count II)......................... 6

                c.     Implied Contract (Count III) .......................................... 6

                d.     Oral Contract (Count VI) ............................................... 8

          2.     ERISA Preempts Plaintiff's Promissory Estoppel Claim (Count V) ..................................................................... 8

          3.     ERISA Preempts Plaintiff's Quantum Meruit Claim (Count VI)...................................................................... 9

          4.     ERISA Preempts Plaintiff's UCL Claim (Count VII).............. 10

    B.     PLAINTIFF'S CLAIMS FAIL ON THE MERITS........................... 11

          1.     Plaintiff's Claim For Breach of Written Contract Fails To State A Claim (Count I)............................................... 11

          2.     Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails to State a Claim (Count II) .................................................................................... 12

          3.     Plaintiff's Claim for Breach of an Implied Contract Fails to State a Claim (Count III) ...................................... 13

          4.     Plaintiff's Claim for Breach of an Oral Contract Fails to State a Claim (Count IV) .......................................... 16

          5.     Plaintiff's Promissory Estoppel Claim Fails to State a Claim (Count V) ..................................................................... 17

          6.     Plaintiff's Quantum Meruit Claim Fails to State a Claim (Count VI)...................................................................... 18

          7.     Plaintiff's UCL Claim Fails to State a Claim (Count VII)........ 19

IV.   Conclusion ..................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Johnson,*
   355 F.3d 1179 (9th Cir. 2004) ................................................................. 3

*Aetna Health Inc. v. Davila,*
   542 U.S. 200 (2004) ................................................................................. 4

*In re Anthem, Inc. Data Breach Litig.,*
   162 F. Supp. 3d 953 (N.D. Cal. 2016) .................................................... 11

*Armijo v. ILWU-PMA Welfare Plan,*
   2016 U.S. Dist. LEXIS 194172 (C.D. Cal. Feb. 3, 2016) .................... 5, 7, 17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. 3

*Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.,*
   2016 U.S. Dist. LEXIS 187305 (C.D. Cal. Sept. 30, 2016) ................... 19

*Bast v. Prudential Ins. Co. of Am.,*
   150 F.3d 1003 (9th Cir. 1998) ................................................................ 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................. 3

*Cal. Shoppers, Inc. v. Royal Globe Ins. Co.,*
   221 Cal. Rptr. 171 (Cal. Ct. App. 1985) ............................................... 13

*Cao v. Aetna Life Ins. Co.,*
   2012 U.S. Dist. LEXIS 168339 (S.D. Cal. Nov. 26, 2012) .................... 9

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.,*
   2017 U.S. Dist. LEXIS 207148 (C.D. Cal. Nov. 27, 2017) ............. 11, 12, 15, 16

*Cedars Sinai Med. Ctr. v. Mid-W. Nat'l Life Ins. Co.,*
   118 F. Supp. 2d 1002 (C.D. Cal. 2000) ................................................. 15

*Cleghorn v. Blue Shield of Cal.,*
   408 F.3d 1222 (9th Cir. 2005) ................................................................ 4

*Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co.*,
 119 F. Supp. 3d 1042 (N.D. Cal. 2015) ............................................................... 19

*Complete Infusion Care, CIC, Inc. v. Aetna Life Ins. Co.*,
 2016 U.S. Dist. LEXIS 14579 (C.D. Cal. Feb. 4, 2016) ..................................... 15

*Day v. Alta Bates Med. Ctr.*,
 119 Cal. Rptr. 2d 606 (Cal. Ct. App. 2002) ........................................................ 18

*Delgado v. ILWU-PMA Welfare Plan*,
 2018 U.S. Dist. LEXIS 225239 (C.D. Cal. Nov. 20, 2018) ............................. 7, 8

*DeVoll v. Burdick Painting, Inc.*,
 35 F.3d 408 (9th Cir. 1994) ................................................................................... 9

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
 2016 U.S. Dist. LEXIS 162166 (C.D. Cal. Nov. 22, 2016) ................................ 10

*Flores v. EMC Mortg. Co.*,
 997 F. Supp. 2d 1088 (E.D. Cal. 2014) ............................................................... 21

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins.
 Co.*, 2013 U.S. Dist. LEXIS 190703 (C.D. Cal. Mar. 12, 2013) ......................... 9

*Gobeille v. Liberty Mut. Ins. Co.*,
 136 S. Ct. 936 (2016) ............................................................................................. 8

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*,
 49 Cal. Rptr. 2d 191 (Cal. Ct. App. 1996) ................................................*passim*

*Heldt v. Guardian Life Ins. Co. of Am.*,
 2017 U.S. Dist. LEXIS 36490 (S.D. Cal. Mar. 13, 2017) ................................. 5, 6

*Hutchins v. Nationstar Mortg. LLC*,
 2017 U.S. Dist. LEXIS 155637 (N.D. Cal. Sept. 22, 2017) ................................ 21

*IV Sols., Inc. v. United Healthcare Servs.*,
 2017 U.S. Dist. LEXIS 210782 (C.D. Cal. Sep. 27, 2017) ........................... 14, 20

*Joanou v. Coca-Cola Co.*,
 26 F.3d 96 (9th Cir. 1994) ..................................................................................... 4

*Kaar v. Wells Fargo Bank, N.A.*,
 2016 U.S. Dist. LEXIS 71475 (N.D. Cal. June 1, 2016) ..................................... 13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)..........................................................................21

*Kor. Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003).................................................................................20

*Korman v. ILWU-PMA Claims Office*,
    2019 U.S. Dist. LEXIS 58646 (C.D. Cal. Mar. 19, 2019) ........................5, 6, 8

*Kwikset Corp v. Superior Court*,
    246 P.3d 877 (Cal. 2011)...............................................................................20

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    61 Cal. Rptr. 3d 221 (Cal. Ct. App. 2007) ........................................................20

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
    131 Cal. Rptr. 836 (Cal. Ct. App. 1976) .............................................................17

*Lodi Mem. Hosp. Ass'n v. Tiger Lines, LLC*,
    2015 U.S. Dist. LEXIS 110495 (C.D. Cal. Aug. 20, 2015) ..........................9, 10

*Lodi Mem. Hosp. Ass'n v. Tiger Lines, LLC*,
    2017 U.S. Dist. LEXIS 37293 (E.D. Cal. Mar. 14, 2017) .................................15

*Mesbahi v. Geico Ins.*,
    2009 U.S. Dist. LEXIS 92725 (N.D. Cal. Oct. 5, 2009)...................................13

*Methodist Hosp. v. Blue Cross of Cal.*,
    2011 U.S. Dist. LEXIS 162115 (C.D. Cal. Mar. 8, 2011) ..................................5

*Monaco v. Liberty Life Assurance Co.*,
    2007 U.S. Dist. LEXIS 11741 (N.D. Cal. Feb. 5, 2007)...................................12

*Mountain View Surgical Ctr. v. Cigna Health Corp.*,
    2015 U.S. Dist. LEXIS 15320 (C.D. Cal. Feb. 9, 2015)...................................11

*New Method Wellness, Inc. v. Cigna HealthCare of Cal., Inc.*,
    2018 WL 5095268 (C.D. Cal. Mar. 19, 2018) ...................................................11

*NYSPA v. UnitedHealth Grp.*,
    798 F.3d 125 (2d Cir. 2014) ...........................................................................10

*Or. Teamster Emp'rs Trust v. Hillsboro Garbage Disposal, Inc.*,
    800 F.3d 1151 (9th Cir. 2015).........................................................................5

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
    218 Cal. Rptr. 3d 562 (Cal. Ct. App. 2017) .................................... 11, 14, 15, 17

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) .............................................................................................. 4

*Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*,
    233 Cal. Rptr. 3d 830 (Cal. Ct. App. 2018) ................................................ 7, 9, 18

*Sarkisyan v. CIGNA Healthcare of Cal., Inc.*,
    613 F. Supp. 2d 1199 (C.D. Cal. 2009) .......................................................*passim*

*Silva v. Providence Hosp. of Oakland*,
    97 P.2d 798 (Cal. 1939) .................................................................................... 13

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
    2017 U.S. Dist. LEXIS 167462 (N.D. Cal. Oct. 10, 2017) .................... 17, 18, 19

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*,
    520 F. Supp. 2d 1184 (C.D. Cal. 2007) ............................................................ 15

*Villanueva v. Fid. Nat'l Title Co.*,
    2013 Cal. Super. LEXIS 420 (Cal. Super. Ct. Nov. 18, 2013) .......................... 19

*Wilson v. Edison Int'l, Inc.*,
    315 F. Supp. 3d 1177 (C.D. Cal. 2018) .............................................................. 3

**Statutes**

29 U.S.C. § 1144 ..................................................................................................... 4

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................ 10, 20

Cal. Bus. & Prof. Code § 17535 .......................................................................... 20

Cal. Health & Safety Code § 1371.8 .................................................................... 19

ERISA Section 514 ..........................................................................................*passim*

ERISA Section 712a .............................................................................................. 10

## I.     INTRODUCTION

This case involves a dispute for payment for medical services provided to members of health care plans allegedly administered or insured by Defendants UnitedHealth Group Incorporated; United Healthcare Services, Inc.; United Healthcare Insurance Company; UHC of California; United HealthCare Service LLC; United Behavioral Health, Inc.; OptumInsight, Inc.; Optum Services, Inc.; and Optum, Inc. (collectively "United").  Plaintiff DR Recovery Encinitas, LLC ("Plaintiff") owns and operates substance use disorder treatment facilities.  Plaintiff seeks payment of claims for unidentified healthcare services provided to 74 patients covered under unidentified health plans.

Although Plaintiff raises various state law causes of action, each is premised on its claim that Defendants failed to properly pay Plaintiff for services it allegedly provided to these 74 patients with "health insurance policies" that were issued or administered by United.  Many, if not all, of those "health insurance policies" are governed by the Employee Retirement Income Security Act ("ERISA").  Despite that, Plaintiff refuses to pursue its remedies under ERISA.  Although dressed up as state law claims, Plaintiff's claims are at heart simply disputes over the terms and administration of ERISA plans.  They are thus preempted by ERISA.  Even if not preempted, however, Plaintiff fails to state a claim on which relief can be granted.

The allegations in the Complaint demonstrate that Plaintiff relies on the ERISA "policies" and that the claims arise under the ERISA plans.  Plaintiff expressly alleges it provided the services because it received verifications from United that "the policies" provided for treatment and the patients had health benefit coverage under the plans, that Plaintiff received assignments from the patients, submitted claims to United for payment for medical services under the "policies," and received payments pursuant to the health benefit plans for their claims. Plaintiff's state law claims in this case arise under the ERISA plans and, therefore, are preempted by ERISA.

1    Even if not preempted, Plaintiff's claims are defectively pled under state law.

2  The breach of contract, implied contract and oral contract causes of action do not

3  allege the existence of a separate, independent agreement.  Plaintiff does not

4  identify any patient or any contract, let alone the specific treatment allegedly

5  covered by the contract.  This is insufficient to create a separate, binding written,

6  oral or implied agreement.  Plaintiff's claim for breach of the implied covenant of

7  good faith and fair dealing fails to state a claim because it depends on the same

8  factual allegations as Plaintiff's breach of contract claim.  The claim for promissory

9  estoppel is defective because Plaintiff fails to provide the details of the purported

10  promise made by United.  The quantum meruit cause of action is defective because

11  Plaintiff has not alleged how United was enriched by medical services rendered to

12  patients or alleged that United requested Plaintiff's services for the patients.  The

13  unfair business practices claim fails because Plaintiff has not stated with reasonable

14  particularity the facts supporting the statutory elements of the violation.  Plaintiff's

15  Complaint should be dismissed in its entirety with prejudice.

16  **II.    FACTUAL BACKGROUND**

17    Plaintiff is an out-of-network alcoholism and substance use disorder

18  treatment provider.  (Compl. ¶ 17.)  Plaintiff alleges that it provided treatment to 74

19  individuals for whom United either insured or administered the group health plans

20  that are at issue in this case, at least some of which are governed by ERISA.[1]  (*Id.*

21  ¶¶ 17, 32.)

22    Plaintiff alleges that it is the assignee and third-party beneficiary of those

23  "policies" and that United has not properly paid the amount due "[b]ased upon the

24  language of the insurance policies . . . ."  (*Id.* ¶¶ 47, 62.)  Plaintiff alleges that it

---

[1] Plaintiff does not dispute that at least some of the plans are ERISA plans.  *See, e.g.*, Declaration of Julie Bullock and Exhibits 1-3 (identifying ERISA health plans).  Indeed, United removed this case to federal court on the basis of those plans' ERISA status (*see* Notice of Removal at ¶8) (Dkt. 1), and Plaintiff did not challenge nor has it disputed that some or all of the plans are governed by ERISA.

1  "confirmed . . . through the required verification of benefits process and, if

2  necessary, the preauthorization process, that each of the patient insureds and their

3  respective treatments were covered by health insurance policies issued and/or

4  administered by Defendants." (*Id.* ¶ 18.)  Plaintiff further alleges that "[t]he

5  policies pay benefits for out-of-network substance use disorder and mental health

6  treatment at seventy percent (70%) of covered charges." (*Id.* ¶ 32.)  Without

7  specifying any specific conversation, written agreement, date of the alleged

8  communication or with whom the communication was made, Plaintiff alleges that it

9  "informed Defendants *to the effect that* Plaintiff would agree to accept the

10  maximum allowable fee under those polices [sic] for Plaintiff's services, which fee

11  is equal to 70% of Plaintiff's fully-billed charges," after subtracting any co-

12  insurance or deductible. (*Id.* ¶ 61.)  Plaintiff generally alleges that United paid less

13  than the amount provided for in the policies. (*Id.* ¶ 35.)

14  **III.    ARGUMENT**

15        Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a

16  complaint when the plaintiff fails "to state a claim upon which relief can be

17  granted."  The complaint must allege "facts sufficient" to show that a claim for

18  relief is "plausible."  *Wilson v. Edison Int'l, Inc.*, 315 F. Supp. 3d 1177, 1184 (C.D.

19  Cal. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet

20  the "sufficient facts" requirement, the complaint must contain more than a

21  "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at

22  555.  Additionally, "[t]he plausibility standard is not akin to a 'probability

23  requirement,' but it asks for more than a sheer possibility that a defendant has acted

24  unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere "conclusory

25  allegations of law and unwarranted inferences are insufficient to defeat a motion to

26  dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  For the reasons

27  explained below, Plaintiff's Complaint does not meet these requirements and

28  should be dismissed.

## A.   ERISA PREEMPTS PLAINTIFF'S STATE LAW CLAIMS

ERISA Section 514 preempts all state laws, including state law causes of action that "relate to any employee benefit plan."  29 U.S.C. § 1144.  There are two types of ERISA preemption: complete preemption as described by the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), and conflict preemption. *See, e.g., Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (describing the two types of preemption).  The broader and more robust "conflict" or "express preemption" doctrine preempts Plaintiff's claims here.

Section 514 preempts all state law causes of action that "relate to" claims for treatment rendered to participants in an ERISA plan or that otherwise seek to duplicate ERISA's civil enforcement remedies.  *See* 29 U.S.C. § 1144(a) (ERISA § 514).  It provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  *Id.*  This provision is "one of the broadest preemption clauses ever enacted by Congress." *Joanou v. Coca-Cola Co.*, 26 F.3d 96, 99 (9th Cir. 1994) (citation and quotations omitted).  The Supreme Court has instructed that a law "relates to" an employee benefit plan if it has either a "connection with or reference to such a plan."  *See Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998) (citation omitted).  Claims "relate to" an employee benefit plan if based on the wrongful denial of benefits, including the improper payment or processing of patients' claims.  *Id.*; *Sarkisyan v. CIGNA Healthcare of Cal., Inc.*, 613 F. Supp. 2d 1199, 1206 (C.D. Cal. 2009) (UCL claim based on wrongful denial of benefits and improper claims handling practices preempted under ERISA).

The U.S. Supreme Court has ruled, "common law causes of action . . . based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987).  This is particularly true when an "analysis of the terms of the ERISA plan is . . . required," even if that analysis "is admittedly

-4-

straightforward." *Or. Teamster Emp'rs Trust v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1156 (9th Cir. 2015). A claim that is preempted under Section 514 must be dismissed on a Rule 12 motion to dismiss. *Sarkisyan*, 613 F. Supp. 2d at 1205-06.

### 1.   ERISA Preempts Plaintiff's Contract Claims (Counts I-IV)

Plaintiff's breach of written contract claim (Count I) alleges that United failed to pay for benefits pursuant to the "terms of the insurance policies" and that Plaintiff is entitled to payment as an assignee and third-party beneficiary of those policies. (Compl. ¶¶ 81-84.) Section 514 preempts that claim because it is a claim for benefits "under the terms" of an ERISA plan. Plaintiff's other contract claims, for breach of the implied covenant of good faith and fair dealing (Count II), breach of implied contract (Count III), and breach of oral contract (Count IV) are preempted for the same reason.

### a.   Breach of Written Contract (Count I)

ERISA expressly preempts contract claims seeking benefits allegedly owed "under the terms" of the policies themselves. *Sarkisyan*, 613 F. Supp. 2d at 1205. Such claims have an impermissible "connection with" employee benefit plans because resolving them requires "analysis of [each] [p]olicy's terms." *Heldt v. Guardian Life Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 36490, at *25 (S.D. Cal. Mar. 13, 2017). That is true regardless of whether a provider plaintiff sues as an assignee, *Korman v. ILWU-PMA Claims Office*, 2019 U.S. Dist. LEXIS 58646, at *45 (C.D. Cal. Mar. 19, 2019), or a "third-party beneficiary" of the policies, *Methodist Hosp. v. Blue Cross of Cal.*, 2011 U.S. Dist. LEXIS 162115, at *23 (C.D. Cal. Mar. 8, 2011). Either way, because those claims "necessarily involve interpretation of plan terms," they are preempted. *Armijo v. ILWU-PMA Welfare Plan*, 2016 U.S. Dist. LEXIS 194172, at *27-28 (C.D. Cal. Feb. 3, 2016) (dismissing providers' contract claim under Section 514 because it was based on benefit eligibility "under the Plan").

1        Plaintiff's contract claim seeks payment of benefits "based on . . . the terms

2  of the insurance policies" themselves.  (Compl. ¶ 81.)  Plaintiff allegedly has a right

3  to payment by virtue of "written assignments" from patients and Plaintiff's status as

4  an "express and implied third-party beneficiary" of the "policies."  (*Id.* ¶¶ 81, 84.)

5  Plaintiff alleges that the policies specify what services are covered, what benefits

6  are available, what exclusions and limitations apply, and what reimbursement rates

7  apply.  (*Id.* ¶ 82.)  Plaintiff alleges that United breached the "policies" by, *inter*

8  *alia*, withholding payments, making unreasonable demands, failing to investigate,

9  and interpreting the policies "in an unduly restrictive manner."  (*Id.* ¶ 93.)  Because

10  resolving those allegations would require "an analysis of [each] [p]olicy's terms,"

11  Plaintiff's breach of contract claim is preempted by ERISA and should be

12  dismissed.  *Heldt*, 2017 U.S. Dist. LEXIS 36490, at *25.

13               **b.**    **Good Faith and Fair Dealing (Count II)**

14        Plaintiff's duplicative good faith and fair dealing claim is also preempted.

15  ERISA preempts good faith claims based on a wrongful denial of benefits under the

16  terms of ERISA plans.  *See Korman*, 2019 U.S. Dist. LEXIS 58646, at *45 (C.D.

17  Cal. Mar. 19, 2019) (dismissing provider's good faith claim as preempted because

18  it was "wholly dependent on the ERISA Plan" and sought "payment of the claims

19  [d]efendant denied"); *see also Sarkisyan*, 613 F. Supp. 2d at 1204 (collecting

20  cases).  Here, Plaintiff's good faith claim alleges that United "breached the

21  policies" and seeks to recover "the benefits payable under the policies."  (Compl. ¶¶

22  100, 104.)  Because that claim is "wholly dependent" on the terms of ERISA plans,

23  it is preempted and should be dismissed.  *Korman*, 2019 U.S. Dist. LEXIS 58646,

24  at *45.

25               **c.**    **Implied Contract (Count III)**

26        Section 514 also preempts Plaintiff's implied contract claim.  Plaintiff alleges

27  that it had an implied contract with United based on (1) United "authorizing and

28  verifying benefits" consistent with plan terms (2) United's "prior course of

conduct" of paying claims, and (3) the existence of a "network gap." (Compl. ¶¶ 114-15.) None of those theories survives preemption.

*First,* ERISA preempts implied contact claims based on United's preauthorization communications that merely describe ERISA plan terms. *See Armijo*, 2016 U.S. Dist. LEXIS 194172, at *27 (holding implied contract claim preempted where premised on plan terms). While courts have held that a promise "independent" of an ERISA plan may be actionable in some circumstances, it must be "separate from the welfare benefit plan itself." *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 848-49 (Cal. Ct. App. 2018). Here, the alleged "promise" and the "policies" are one and the same. Plaintiff alleges that "the policies" provided for out-of-network substance use disorder and mental health treatment at seventy percent of covered charges. (Compl. ¶ 32.) During preauthorization calls "required by the insurance policies" (*Id.* ¶ 59), United allegedly agreed to pay Plaintiff the amount due under the policies. (*Id.* ¶ 62.) Because United allegedly simply agreed to pay pursuant to plan terms, ERISA preempts Plaintiff's claim.

*Second*, ERISA preempts implied contract claims based on a "prior course of conduct" of "making payments" under ERISA plans. *Delgado v. ILWU-PMA Welfare Plan*, 2018 U.S. Dist. LEXIS 225239, at *7-8 (C.D. Cal. Nov. 20, 2018) (holding that ERISA preempted an implied contract claim where alleged "prior course of conduct was nothing more than the Plan making payments pursuant to the ERISA plan"); *see also Port Med. Wellness*, 233 Cal. Rptr. 3d at 850 (Section 514 preempted a provider's claim predicated on a "history of paying claims for benefits" due under the terms of an ERISA plan). Plaintiff alleges that it has an implied contract based on United's payment of ERISA-covered benefit claim in the past. (Compl. ¶¶ 113-14.) Pursuant to that "contract," prior to 2015, United paid claims "in accordance with the terms of the policies." (*Id.* ¶ 88.) United allegedly breached that implied "contract" in 2015, when it decreased or ceased

1  reimbursements to Plaintiff.  (*Id.*)  Because the "course of conduct" was "nothing

2  more than [United] making payments pursuant to the ERISA plan," Plaintiff's

3  claim is preempted.  *Delgado*, 2018 U.S. Dist. LEXIS 225239, at *7.

4       *Third*, ERISA preempts all state laws—including Plaintiff's alleged implied

5  contract based on a "network gap"—that interfere with ERISA-regulated

6  relationships between a plan, its participants, and its claims fiduciaries.  *See*

7  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 944-46 (2016) (recognizing that

8  state laws that impact claims fiduciaries are expressly preempted).  As explained

9  further below, no law supports Plaintiff's claim that a "network gap" gives rise to a

10  cause of action for implied contract.  Even if it did, Section 514 would preempt any

11  such claim because it would "interfere[] with nationally uniform plan

12  administration" as well as "force an ERISA plan to adopt a certain scheme of

13  substantive coverage."  *Gobeille*, 136 S.Ct. at 943 (citations and quotations

14  omitted).  For all those reasons, Plaintiff's implied contract claim is preempted and

15  should be dismissed.

16             **d.**    **Oral Contract (Count VI)**

17       Plaintiff's oral contract claim is a reprise of its express contract claim and is

18  likewise preempted.  Plaintiff alleges that United promised to pay "on the same

19  terms as provided for in the policies."  (Compl. ¶ 122.)  As explained above, such

20  claims are preempted because they require analysis of the "terms" of each

21  "polic[y]."  *See, e.g.*, *Sarkisyan*, 613 F. Supp. 2d at 1205 (Section 514 preempts

22  contract claim based on "terms" of ERISA plan); *Korman*, 2019 U.S. Dist. LEXIS

23  58646, at *45 (same); *Delgado*, 2018 U.S. Dist. LEXIS 225239, at *7-8 (same).

24  Accordingly, Count VI is preempted and should be dismissed.

25           **2.**    **ERISA Preempts Plaintiff's Promissory Estoppel Claim**

26                  **(Count V)**

27       ERISA preempts Plaintiff's promissory estoppel claim because it merely

28  alleges that United promised to pay for benefits "on the same terms as provide for

in the policies." (Compl. ¶ 129.)  Section 514 preempts promissory estoppel claims based on an alleged "promise" to pay ERISA plan benefits.  *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 411-12 (9th Cir. 1994) (ERISA preempted promissory estoppel claim based on "promise" to provide plaintiff with specified amount of benefits), *cert. denied*, 514 U.S. 1027 (1995).  Specifically, ERISA preempts claims, like Plaintiff's here, based on "representations over the phone" regarding "coverage under the plan." *Cao v. Aetna Life Ins. Co.*, 2012 U.S. Dist. LEXIS 168339, at *6 (S.D. Cal. Nov. 26, 2012) (ERISA preempted promissory estoppel claim because it would not have existed "but for" the underpayment of benefits).  Here, as in *Cao*, Plaintiff's promissory estoppel claim is based entirely on United's alleged "promise" to pay benefits "on the same terms as . . . the policies." (Compl. ¶ 129.)  Because that "representation" concerned "coverage under the plan," Plaintiff's claim is preempted and should be dismissed.  *Cao*, 2012 U.S. Dist. LEXIS 168339, at *6.

### 3.    ERISA Preempts Plaintiff's Quantum Meruit Claim (Count VI)

Plaintiff's quantum meruit claim fares no better.  Plaintiff alleges that United "verif[ied] benefits and authoriz[ed] treatment when necessary" under patients' policies (Compl. ¶ 145; *see also id.* ¶ 59), but then did not pay Plaintiff for the treatment it provided to patients, (*id.* ¶ 149).  As the California Court of Appeals has already held, such a claim is "plainly preempted." *Port Med. Wellness*, 233 Cal. Rptr. 3d at 852.  As *Port Medical* held, when a provider "contends it provided covered services to Plan members and now seeks payment for those services. . . . [i]t is difficult to imagine a more apparent claim for unpaid benefits under an ERISA plan than [a] quantum meruit claim." *Id.*[2]  Because Plaintiff "contends it

---

[2] *See also Lodi Mem. Hosp. Ass'n v. Tiger Lines, LLC*, 2015 U.S. Dist. LEXIS 110495, at *19-20 (C.D. Cal. Aug. 20, 2015) (ERISA preempted quantum meruit claim); *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2013 U.S. Dist. LEXIS 190703, at *30-32 (C.D. Cal. Mar. 12, 2013) (same).

1  provided covered services to Plan members and now seeks payment for those

2  services," its quantum meruit claim is preempted.  *Id.*

3      **4.    ERISA Preempts Plaintiff's UCL Claim (Count VII)**

4      Plaintiff's claim for violations of California's Unfair Competition Law

5  ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.* is also preempted.  Plaintiff alleges

6  that unspecified conduct constitutes unlawful, unfair, and fraudulent business

7  practices in violation of that statute.  (Compl. ¶ 153.)  It seeks injunctive relief

8  compelling payment of benefits and the appointment of a receiver to "restor[e]" its

9  "money or property" that United allegedly acquired through unfair competition.

10 (*Id.* ¶¶ 155-56.)

11      As with the claims above, ERISA preempts UCL claims, like the one here,

12 that are essentially claims for benefits.  UCL claims "cannot" be based on "a failure

13 to pay benefits" because that injury derives "solely from ERISA."  *Dual Diagnosis*

14 *Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2016 U.S. Dist. LEXIS 162166, at *54

15 (C.D. Cal. Nov. 22, 2016).  Those claims are "subject to ERISA's exclusive

16 remedies" and are preempted.  *Id.*; *see, e.g.*, *Sarkisyan*, 613 F. Supp. 2d at 1206

17 (Section 514(a) preempts UCL claim based on "improper claims handling

18 practices"); *Lodi Mem. Hosp. Ass'n v. Tiger Lines*, 2015 U.S. Dist. LEXIS 110495,

19 at *19-20 (C.D. Cal. Aug. 20, 2015) (ERISA preempts provider's UCL claim for

20 "improper payment of claims") (citing *Cleghorn*, 408 F.3d at 1225).[3]  Although

21 Plaintiff concludes—without any plausible factual allegations—that United violated

22 various state and federal statutes (*see* Compl. ¶¶ 41-44, 153), its claim is based on

23 United's alleged conduct of "unjustifiably withholding proper payment of claims,"

24 (*id.* ¶ 155).  Because Plaintiff's allegations are based on United's alleged "failure to

25 pay benefits," its UCL claim is preempted.  *Dual Diagnosis Treatment Ctr.*, 2016

26

27 [3] In addition, ERISA preempts claims for violations of federal mental health parity
   laws such as ERISA Section 712a.  *NYSPA v. UnitedHealth Grp.*, 798 F.3d 125,
28 132-134 (2d Cir. 2014).

1   U.S. Dist. LEXIS 162166, at *54.

2       **B.    PLAINTIFF'S CLAIMS FAIL ON THE MERITS**

3           **1.    Plaintiff's Claim For Breach of Written Contract Fails To**

4                 **State A Claim (Count I)**

5       Plaintiff's breach of contract claim requires it to plead "(1) the existence of a

6   contract, (2) performance or excuse for nonperformance, (3) defendants' breach,

7   and (4) damages." *Mountain View Surgical Ctr. v. Cigna Health Corp*., 2015 U.S.

8   Dist. LEXIS 15320, at *4 (C.D. Cal. Feb. 9, 2015). "With respect to this first

9   requirement—the need to plead the contract—a plaintiff must, in actions

10   involving breach of a written contract, allege the specific provisions in the contract

11   creating the obligation the defendant is said to have breached." *In re Anthem, Inc.*

12   *Data Breach Litig*., 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (quotations

13   omitted); *see also Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 U.S. Dist.

14   LEXIS 207148, at *10 (C.D. Cal. Nov. 27, 2017) (dismissing implied contract

15   claim where provider failed to allege "enough facts to explain what the patients'

16   agreements provided")*; see also New Method Wellness, Inc. v. Cigna HealthCare*

17   *of Cal., Inc*., 2018 WL 5095268, at *2 (C.D. Cal. Mar. 19, 2018) (dismissing

18   implied contract claim because plaintiff failed to "sufficiently allege the relevant

19   terms of coverage for the 37 patients"); *Pac. Bay Recovery, Inc. v. Cal. Physicians'*

20   *Servs., Inc.*, 218 Cal. Rptr. 3d 562, 574-75 (Cal. Ct. App. 2017) (dismissing

21   provider's implied contract claim because general allegations "lack the specific

22   facts required for us to determine there was any meeting of the minds between the

23   parties").

24       Plaintiff fails to do that here.  Plaintiff fails to provide any allegations to

25   determine which of the United Defendants entered into a contract, what these

26   unidentified contracts purportedly required and whether there was a breach.  In

27   similar circumstances, courts concluded that a failure to include material terms of a

28   plan necessitated dismissal.  For example, in *Casa Bella Recovery*, this court held

1  that although a plaintiff's inclusion of general information about what kinds of

2  services were covered by an insurance plan, the complaint was deficient because it

3  did not allege that the policy covered the kind of treatment provided or for what

4  proportion of the treatment's cost.  2017 U.S. Dist. LEXIS 207148, at *10.

5  　　　Similarly, here, Plaintiff does not identify *any* patient or *any* contract, let

6  alone the kind of treatment allegedly covered by the contract, or the contractually-

7  provided rate for that treatment.  Plaintiff only contends that the contracts required

8  United to pay the "70% of the billed charges after subtracting any insured cost-

9  sharing amounts up the annual out-of-pocket maximum" for "mental health and

10  substance use disorder treatment and laboratory services."  (Compl. ¶ 82.)  Plaintiff

11  also alleges that "[e]ach of [United's] policies issued to the insured patients treated

12  by Plaintiff, in relevant part, provide for the same coverages, reimbursement rates

13  and coinsurance percentages, deductibles and out-of-pocket maximums."  (*Id.* ¶

14  81.)  This is insufficient to support a claim.  *See Casa Bella Recovery*, 2017 U.S.

15  Dist. LEXIS 207148, at *10.  With these generic catch-all allegations, neither

16  United nor the Court can determine what United was purportedly contractually

17  required to do for the 74 patients at issue, what Plaintiff was required to do, or

18  whether the parties' fulfilled their respective duties.  Plaintiff fails to allege specific

19  provisions in the insurance policies and instead rests on bald allegations.  Without

20  such information, the claims must fail.  *See id.* (dismissing contract claim for failure

21  to comply with this standard).

22  　　　　　**2.**　　**Plaintiff's Claim for Breach of the Implied Covenant of**

23  　　　　　　　　**Good Faith and Fair Dealing Fails to State a Claim (Count**

24  　　　　　　　　**II)**

25  　　　To sustain its breach of good faith and fair dealing claim, Plaintiff must plead

26  facts demonstrating that United "engage[d] in some conduct that frustrates the other

27  party's rights to the benefits of [an] agreement."  *Monaco v. Liberty Life Assurance*

28  *Co.*, 2007 U.S. Dist. LEXIS 11741, at *11 (N.D. Cal. Feb. 5, 2007).  A claim for

1   breach of implied covenant of duty of good faith should be dismissed where it

2   depends on the same allegations as a breach of contract claim.  *See Kaar v. Wells*

3   *Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 71475, at *4-5 (N.D. Cal. June 1, 2016)

4   (dismissing breach of implied covenant claim because "[p]laintiffs make no

5   separate factual claims" for it and "[i]t will be subsumed under the breach of

6   contract claim"); *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 221 Cal. Rptr. 171,

7   200 (Cal. Ct. App. 1985) ("[B]reach of the implied covenant of good faith and fair

8   dealing involves something beyond breach of the contractual duty itself.").

9          Here, Plaintiff's implied covenant claim depends on the same factual

10  allegations as its breach of contract claim, *i.e.* United's alleged failure to pay claims

11  for benefits under the patients' policies.  For example, Plaintiff alleges that United

12  breached the implied covenant of good faith by "withholding of proper claim

13  payments," "interpreting the policies in an unduly restrictive manner so as to deny

14  coverage and benefits," and "forcing Plaintiff to initiate litigation to recover the

15  policy benefits owed."  (Compl. ¶ 100.)  But Plaintiff also alleges, in support of its

16  breach of written contract claim (Count I), that United breached the insurance

17  policies by "withholding of proper claim payments" and "interpreting the policies

18  in an unduly restrictive manner so as to deny coverage and benefits."  (*Id.* ¶ 93.)

19  Therefore, Plaintiff's claim for breach of the implied covenant of good faith and

20  fair dealing should be dismissed.

21          **3.     Plaintiff's Claim for Breach of an Implied Contract Fails to**

22          **State a Claim (Count III)**

23          An implied contract "consists of obligations arising from a mutual agreement

24  and intent to promise where the agreement and promise have not been expressed in

25  words." *Silva v. Providence Hosp. of Oakland*, 97 P.2d 798, 804 (Cal. 1939).  "The

26  essential elements of an implied-in-fact contract are mutual assent and

27  consideration." *Mesbahi v. Geico Ins.*, 2009 U.S. Dist. LEXIS 92725, at *31-32

28  (N.D. Cal. Oct. 5, 2009) (quotations and citations omitted) (concluding that an

-13-

1   allegation based on a claim of an implied-in-fact contract failed for lack of

2   consideration).  Plaintiff's implied contract claim fails those requirements for

3   several reasons.

4          *First*, Plaintiff fails to allege mutual assent or consideration.  Plaintiff's only

5   basis for the purported contract is an alleged "course of conduct," in which Plaintiff

6   would call to verify benefits and United would generally process and pay for those

7   benefits for *other* patients in *prior* instances within 45 days.  (*See* Compl. ¶ 114.)

8   But a unilateral expectation that that "course of conduct" would continue does not

9   create an implied-in-fact contract.  *IV Sols., Inc. v. United Healthcare Servs.*, 2017

10  U.S. Dist. LEXIS 210782, at *46 (C.D. Cal. Sep. 27, 2017) (dismissing a claim

11  alleging breach of an implied-in-fact contract claim without leave to amend where

12  the plaintiff alleged that United paid "between 90 and 100 percent of the billed

13  charges" for ten years, holding that this conduct was not sufficient to establish an

14  agreement that United "would pay whatever [the plaintiff] billed").  Although

15  United may have approved prior payments to Plaintiff, that does not mean that it is

16  required to approve each and every payment in the future.  *See id.*  Were it

17  otherwise, United would be effectively obligated to pay every patient's claims for

18  plan benefits simply because it had paid prior claims for benefits for other patients.

19  Plaintiff fails to allege any facts that would indicate United assented to any implied

20  contract.

21         *Second*, Plaintiff fails to allege any plausible allegations supporting its

22  conclusion that United's preauthorization communications created an implied

23  contract.  The California Court of Appeals has rejected Plaintiff's very same

24  argument.  In *Pacific Bay Recovery*, that court held that verification and

25  preauthorization phone calls do *not* create promises to pay benefits separate and

26  apart from the terms of the ERISA plans at issue.  218 Cal. Rptr. 3d at 574-75

27  (dismissing implied contract claim where provider failed to allege "specific facts"

28  that would show a "meeting of the minds" in pre-authorization communications).

Other courts have reached a similar result.[4]  As *Pacific Bay* recognized, allegations that fail to specify the "type [] or the extent of treatment" as well as "what exactly" an insurer agreed to pay are insufficient to support an implied contract.  *Id.* at 575.  Plaintiff's general allegations contain no such "specific facts" that would plausibly support its allegation that United intended to create a new "implied contract" apart from the policies at issue.

*Third*, in addition to the above deficiencies, Plaintiff's implied contract theory fails as matter of law.  An implied contract can only be created by conduct, not "expressions in words." *Lodi Mem. Hosp. Ass'n v. Tiger Lines, LLC*, 2017 U.S. Dist. LEXIS 37293, at *16 (E.D. Cal. Mar. 14, 2017).  Therefore, the oral telephone conversations between United and Plaintiff did not create an implied contract, and Plaintiff has not alleged any conduct that did.  Further, there cannot be "a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Complete Infusion Care, CIC, Inc. v. Aetna Life Ins. Co.*, 2016 U.S. Dist. LEXIS 14579, at *10 (C.D. Cal. Feb. 4, 2016).  According to Plaintiff's own allegations, if United and Plaintiff entered into an express oral contract (Count IV) based on the calls "verifying benefits and authorizing treatment," (Compl. ¶ 122, Count IV), an implied contract based on the calls "authorizing and verifying benefits" cannot exist (*id*. ¶ 114, Count III).  For all of these reasons, the implied contract claim should be dismissed.[5]

---

[4] *See also Cedars Sinai Med. Ctr. v. Mid-W. Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("insurer's verification is not the same as a promise to pay."); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007) (coverage verification "cannot be construed as a binding contractual agreement" (quotations omitted)).

[5] Plaintiff's argument that it has an implied contract with United based on a "network gap" is without merit.  (Compl. ¶¶ 87, 115.)  Plaintiff fails to allege *any* facts to support its conclusion that a "network gap" existed.  *See Casa Bella Recovery*, 2017 U.S. Dist. LEXIS 207148, at *13.

### 4.     Plaintiff's Claim for Breach of an Oral Contract Fails to State a Claim (Count IV)

Even if not preempted, Plaintiff fails to allege facts sufficient to establish that United and Plaintiff entered into an oral contract during the preauthorization telephone calls.  This is fatal to these claims.

As an initial matter, Plaintiff does not allege that the "contracts" to pay certain benefits were created during traditional negotiations between parties, but rather during administrative telephone calls designed to confirm benefit eligibility. (Compl. ¶¶ 60, 122-23.)  As explained above, Plaintiff has not alleged any details that would suggest that a statement made during the preauthorization process qualifies as an offer to enter into a contractual relationship, as opposed to a mere confirmation of coverage.  (*See supra* at p. 14.)  The law requires more, as courts recognize that coverage confirmation and/or preauthorization phone calls generally do not create promises to pay benefits separate and apart from terms of the ERISA plans at issue.  (*Id.*)

Here, nothing in the Complaint suggests that during the telephone calls United made any specific promise or offer to make payments separate and apart from the ERISA plans themselves, which defeats Plaintiff's attempt to establish contracts distinct from the plans.  *See Casa Bella Recovery*, 2017 U.S. Dist. LEXIS 207148, at *12 (dismissing breach of contract claim based on preauthorization communications where plaintiff failed to "plausibly" state the existence of a contract by pleading basic contractual details).  Indeed, all Plaintiff alleges is that United representatives made statements about the terms of the patients' ERISA plans—specifically that United's representatives would pay for treatment "as provided for in the policies between [United] and their insureds" and that the plans paid for out-of-network coverage at certain rates.  (Compl. ¶ 122.)  There is, in fact, not a single allegation that United made any binding, effective, promise to pay, as opposed to simply providing information about the terms of the patients' ERISA

1    plans.  Such allegations do not establish an independent contract.  *See Armijo*, 2015

2    U.S. Dist. LEXIS 192447, at *70-71 (dismissing contract type claim because the

3    complaint did not allege any alleged direct or indirect promises to pay separate and

4    distinct from the terms of the ERISA plans).  Accordingly, Plaintiff's claim for

5    breach of an oral contract should be dismissed.

6           **5.      Plaintiff's Promissory Estoppel Claim Fails to State a Claim**

7                  **(Count V)**

8           Plaintiff's promissory estoppel claim alleges that United made a "promise" to

9    Plaintiff by "verifying benefits and authorizing treatment."  (Compl. ¶ 129.)  The

10   claim should be dismissed because Plaintiff fails to plausibly allege a "clear and

11   unambiguous" promise.  *Laks v. Coast Fed. Sav. & Loan Ass'n*, 131 Cal. Rptr. 836,

12   839 (Cal. Ct. App. 1976).

13          It is well settled that a verification of health benefits does not create an

14   implied promise to pay.  *See Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,

15   2017 U.S. Dist. LEXIS 167462, at *16-17 (N.D. Cal. Oct. 10, 2017)

16   (representations about terms of insurance policies are not "promises"); *see also*

17   *Pac. Bay Recovery*, 218 Cal. Rptr. 3d at 574-75 n.6. (insurer's representation that a

18   patient was "insured, covered, and eligible for coverage" did not constitute a clear

19   and unambiguous promise to pay).  In *Summit Estate* for example, the plaintiff, a

20   substance abuse treatment facility sought to recover on a claim for promissory

21   estoppel by alleging, as Plaintiff does in this case, that the insurer represented that

22   "Defendants would pay for treatment at the usual, reasonable and customary rate."

23   2017 U.S. Dist. LEXIS 167462, at *2.  The Court determined that these

24   "representations about the terms of certain insurance policies—d[id] not amount to

25   a clear and unambiguous promise by Defendants to pay for substance abuse

26   treatment services . . . ."  *Id.* at *17.

27          Here, the "promises" upon which Plaintiff relies are likewise merely

28   representations of what the plan covers in certain circumstances—not assurances

1  that United would pay based on the circumstances at hand.  (*See, e.g.*, Compl. ¶ 129

2  (claiming that United's representatives "promise[d] to pay Plaintiff on the same

3  terms as provided for in the policies.").  Because those representations do not

4  amount to clear and unambiguous promises to pay, Plaintiff's promissory estoppel

5  claim should be dismissed.

6        **6.     Plaintiff's Quantum Meruit Claim Fails to State a Claim**

7               **(Count VI)**

8        Plaintiff's quantum meruit claim alleges that United must reimburse it for its

9  services to United's insureds because United "knew that Plaintiff was providing

10  services to Defendants' insureds and promised to pay Plaintiff for the treatment and

11  thereafter enjoyed the benefit of Plaintiff providing the services Defendants were

12  obliged to ensure for their insureds."  (Compl. ¶ 145.)  But Plaintiff fails to allege—

13  as it must—that "(1) the plaintiff acted pursuant to an explicit or implicit request for

14  the services by the defendant, and (2) the services conferred a benefit on the

15  defendant."  *Port Med.*, 233 Cal. Rptr. 3d at 852 (citation and quotations omitted).

16  Plaintiff's claim fails for two reasons.

17        *First,* Plaintiff fails to plausibly allege that United requested Plaintiff's

18  services.  "[W]hen the services are rendered by the plaintiff to a third person, the

19  courts have required that there be a specific request therefor from the defendant . . .

20  ."  *Day v. Alta Bates Med. Ctr.*, 119 Cal. Rptr. 2d 606, 610 (Cal. Ct. App. 2002)

21  (citation and quotations omitted).  Although Plaintiff states that United "requested

22  that Plaintiff provide medically necessary treatment," it bases this allegation on the

23  claim that United "verif[ied] benefits."  (*See* Compl. ¶ 144-45.)  Such an allegation

24  does not constitute a "specific request" for services.  In fact, courts routinely hold

25  that it does not.  *See Summit Estate*, 2017 U.S. Dist. LEXIS 167462, at *32-33

26  (dismissing plaintiff's quantum meruit claim because "[e]ven assuming that

27  Defendants verified coverage and authorized Plaintiff to provide substance abuse

28  treatment services," those representations did not "plausibly suggest that

-18-

1   Defendants requested Plaintiff to render those services") (internal citations

2   omitted); *see also Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, 2016

3   U.S. Dist. LEXIS 187305, at *8 (C.D. Cal. Sept. 30, 2016); *Cmty. Hosp. of the*

4   *Monterey Peninsula v. Aetna Life Ins. Co.*, 119 F. Supp. 3d 1042, 1052 (N.D. Cal.

5   2015) ("No reasonable jury could conclude that [the plaintiff] 'performed services

6   at [Aetna's] request,' when in fact [the plaintiff] initiated contact with Aetna as to

7   authorization.").

8        *Second*, Plaintiff's quantum meruit claim should be dismissed because a

9   valid contract exists that covers the same subject matter.  "[I]t is well settled that

10  there is no equitable basis for [quantum meruit] when the parties have an actual

11  agreement covering compensation."  *Hedging Concepts, Inc. v. First Alliance*

12  *Mortg. Co.*, 49 Cal. Rptr. 2d 191, 197 (Cal. Ct. App. 1996).  Because a contract—

13  the insurance or group health plan itself—exists between United and the patients at

14  issue, and this contract is the basis for Count 1 of Plaintiff's Complaint, any claim

15  for quantum meruit fails.

16       *Third*, Plaintiff's reliance on California Health and Safety Code Section

17  1371.8 is misplaced.  This statute does not provide for a private right of action.

18  *Summit Estate, Inc.*, 2017 U.S. Dist. LEXIS 167462, at *23 ("[Section] 1371.8 does

19  not provide a private right of action.").  Further, Plaintiff cannot use California's

20  common law to circumvent the Legislature's intent that administrative remedies

21  would govern an insurer's relationship with its patients.  *See, e.g.*, *Villanueva v.*

22  *Fid. Nat'l Title Co.*, 2013 Cal. Super. LEXIS 420, at *14 (Cal. Super. Ct. Nov. 18,

23  2013) (dismissing common law claim for unjust enrichment, where the basis for the

24  claim was the violation of an insurance statute that did not include a private right of

25  action).  Accordingly, Plaintiff's claim for quantum meruit should be dismissed.

26          **7.    Plaintiff's UCL Claim Fails to State a Claim (Count VII)**

27       Plaintiff alleges that United violated the UCL by violating unspecified state

28  and federal statutes.  (*See* Compl. ¶ 153.)  These barebones allegations are

-19-

insufficient to state a claim under the UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

To have standing to bring a claim under the UCL, Plaintiff must allege that it "suffered injury in fact" and "lost money or property" as a result of United's actions.  Cal. Bus. & Prof. Code §§ 17204, 17535; *Kwikset Corp v. Superior Court*, 246 P.3d 877, 884-85 (Cal. 2011).  To make this showing, Plaintiff must allege facts supporting an equitable restitution claim—that is "a defendant has wrongfully acquired funds or property in which a plaintiffs has an ownership interest." *Feitelberg v. Credit Suisse First Bos., LLC*, 36 Ca. Rptr. 3d 592, 601 (Cal. Ct. App. 2005).[6]  Although Plaintiff claims that it should have been paid damages for breach of contract, "contract damages" are not an "an identifiable fund in United's possession in which [the plaintiff] could claim an ownership interest for the purposes of a claim for restitution."  *IV Sols.*, 2014 U.S. Dist. LEXIS 197034, at *24.  This is fatal to Plaintiff's UCL claim.  Even if it could seek some relief, however, Plaintiff cannot state a claim under any of the three prongs of the UCL.

*First*, Plaintiff cannot state a claim under the UCL's "unfair" prong, which is limited to consumers and competitors.  *See Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (Cal. Ct. App. 2007).  A non-competing business cannot resolve a business-to-business contract dispute through a claim under the UCL's "unfair" prong.  *Id.*  Plaintiff is neither a competitor nor a consumer of United.  Rather, it is a non-competing business seeking to recover money it claims United was obligated to pay for services it provided to United's insureds.  Therefore, Plaintiff cannot pursue a claim under the "unfair" prong of the UCL.

*Second*, Plaintiff also cannot state a claim under the "fraudulent" prong of the

---

[6] *See Kor. Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 949 (Cal. 2003) (restitution requires that "money or property [came] from the prospective plaintiff in the first instance").

UCL.  A plaintiff alleging a fraudulent business practice under the UCL "must state with reasonable particularity the facts supporting the statutory elements of the violation."  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119 (E.D. Cal. 2014) (quotations and citation omitted).  Here, Plaintiff merely states that United's conduct "constitutes bad faith."  (Compl. ¶ 153.)  Plaintiff has failed to identify any particular statements that United made to Plaintiff that were fraudulent, the time when those statements were made, the representative making those statements, and the individual that received the statement.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of a UCL claim for lack of particularity because the plaintiff failed to plead who made the fraudulent statements, when they made the fraudulent statements, or what the statements actually said).

*Third*, Plaintiff also cannot state a claim under the "unlawful" prong of the UCL.  A business practice is "unlawful" if it violates an underlying state or federal statute or the common law.  *Flores*, 997 F. Supp. 2d at 1118.  A plaintiff cannot state a claim merely by alleging a "laundry list" of statutes.  *Hutchins v. Nationstar Mortg. LLC*, 2017 U.S. Dist. LEXIS 155637, at *35 (N.D. Cal. Sept. 22, 2017).  Here, Plaintiff alleges United's "conduct" was "unlawful" because it violated a series of state and federal statutes. (Compl. ¶¶ 42-44.) That "laundry list" of conclusory allegations fails to allege a claim under the "unlawful" prong of the UCL.

## IV.   CONCLUSION

For all the foregoing reasons, United respectfully requests that this Court grant its motion to dismiss in its entirety.

/ /

/ /

/ /

/ /

1

2
Dated:  December 31, 2019          DORSEY & WHITNEY LLP

3
                                  By: */s/ Michelle S. Grant*
4                                     Divya S. Gupta
                                      Michelle S. Grant (*pro hac vice*)
5
                                  Attorneys for Defendants UnitedHealth
6                                 Group Incorporated; United Healthcare
                                  Services, Inc.; United Healthcare Insurance
7                                 Company; UHC of California; United
                                  Healthcare Service LLC; United Behavioral
8                                 Health, Inc.; OptumInsight, Inc.; Optum
                                  Services, Inc.; and Optum, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

Electronically Filed by Superior Court of California, County of Orange, 12/20/2019 07:04:32 PM.
DAVID H. YAMASAKI, Clerk of the Court By Ryan Gee, Deputy Clerk. 30-2019-01099689-CU-BC-CJC ROA # 2

1  **CALLAHAN & BLAINE, APLC**
   Daniel J. Callahan (Bar No. 91490)
2  Edward Susolik (Bar No. 151081)
   Richard T. Collins (Bar No. 166577)
3  Damon D. Eisenbrey (Bar No. 215927)
   3 Hutton Centre Drive, Ninth Floor
4  Santa Ana, California 92707
   Telephone: (714) 241-4444
5  Facsimile:  (714) 241-4445

6  Attorneys for DR Recovery Encinitas, LLC

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **COUNTY OF ORANGE**

                                              Judge Walter Schwarm

10  DR RECOVERY ENCINITAS, LLC, a          Case No.: 30-2019-01099689-CU-BC-CJC
    California limited liability company,
11
                    Plaintiff,
12
                                            **COMPLAINT FOR:**
13          v.
                                            1.  **BREACH OF WRITTEN CONTRACT**
    UNITEDHEALTH GROUP, INC., a             2.  **BREACH OF IMPLIED COVENANT**
14  Delaware corporation;                       **OF GOOD FAITH AND FAIR**
    UNITED HEALTHCARE SERVICES, INC.,           **DEALING**
15  a Minnesota corporation;                3.  **BREACH OF IMPLIED CONTRACT**
    UNITED HEALTHCARE INSURANCE           4.  **BREACH OF ORAL CONTRACT**
16  COMPANY, a Connecticut corporation;   5.  **PROMISSORY ESTOPPEL**
    UHC OF CALIFORNIA, a California         6.  **QUANTUM MERUIT**
17  corporation;                           7.  **UNFAIR COMPETITION**
    UNITED HEALTHCARE SERVICES LLC, a
18  Delaware limited liability company;
    UNITED BEHAVIORAL HEALTH, INC., a      **DEMAND FOR JURY TRIAL**
19  California corporation;
    OPTUMINSIGHT, INC., a Delaware
20  corporation;
    OPTUM SERVICES, INC., a Delaware
21  corporation;
    OPTUM, INC., a Delaware corporation;
22  VIANT, INC., a Nevada corporation;
    MULTIPLAN, INC., a New York
23  corporation; and
    DOES 1 through 25, inclusive,
24
                    Defendants.
25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Plaintiff DR Recovery Encinitas, LLC hereby alleges against Defendants UnitedHealth

2   Group, Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, UHC of

3   California, United HealthCare Services LLC, United Behavioral Health, Inc., OptumInsight, Inc.,

4   Optum Services, Inc., Optum, Inc., Viant Inc., MultiPlan, Inc., and Does 1 through 25, as follows:

5                                    **THE PARTIES**

6        1.      Plaintiff DR Recovery Encinitas, LLC (TIN 47-1361036) ("Plaintiff") is, and at all

7   relevant times herein mentioned was, a California limited liability corporation qualified to do

8   business in the State of California.  Plaintiff is, and at all relevant times herein was, an alcoholism

9   and substance use disorder treatment provider in the profession of helping individuals recover

10  from alcoholism and addiction and return to their families and communities as productive and

11  contributing members of society.  Plaintiff is, and at all relevant times herein was, certified by the

12  California Department of Health Care Services ("DHCS") to operate an alcoholism and substance

13  use disorder treatment program.  Plaintiff at all relevant times herein has had a Centers for

14  Medicare and Medicaid Services ("CMS"), Clinical Laboratory Improvements Amendments

15  ("CLIA"), certificate of waiver, and at times relevant herein, Plaintiff was licensed by the

16  California Department of Public Health ("DPH") and accredited by the CMS and Commission on

17  Office Laboratory Accreditation ("COLA"), for the examination of materials derived from the

18  human body for the purpose of providing information for the diagnosis, prevention, and treatment

19  of human disease or impairment, and to determine, measure, or otherwise describe the presence or

20  absence of various substances or organisms in the body.

21       2.      On information and belief, Defendant UnitedHealth Group Inc. ("UHG") is a

22  Delaware corporation which conducts insurance operations throughout California.  UHG issues

23  health insurance and issues, administers, and makes coverage and benefit determinations, and

24  develops and applies guidelines in making benefit determinations related to health care policies

25  nationally through its various wholly-owned and/or controlled subsidiaries, controlled agents

26  and/or undisclosed principals, including, but not limited to, Defendants United HealthCare

27  Services, Inc., United HealthCare Insurance Company, UNC of California, United HealthCare

28  Services LLC, United Behavioral Health, Inc., OptumInsight, Inc., Optum Services, Inc., Optum,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Inc., Viant Inc., and MultiPlan, Inc.  Plaintiff is informed and believes, and based thereon alleges,

2  that UHG is licensed and/or regulated by the California Department of Insurance ("CDI") and/or

3  the California Department of Managed Health Care ("CDMHC") to transact the business of

4  insurance in the State of California, is in fact transacting the business of insurance in the State of

5  California, and is thereby subject to the laws and regulations of the State of California.  Plaintiff is

6  informed and believes, and based thereon alleges, that UHG operates as and owns the trademark

7  "UnitedHealthcare."

8      3.      On information and belief, Defendant United HealthCare Services, Inc. ("UHS") is

9  a Minnesota corporation which conducts insurance operations throughout California.  UHS

10  provides health benefit programs for individuals and families, employers, military service

11  personnel, retirees and their families, and serves as the operating division of UHG and its

12  subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon alleges, that UHS

13  is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in

14  the State of California, is in fact transacting the business of insurance in the State of California,

15  and is thereby subject to the laws and regulations of the State of California.

16      4.      On information and belief, Defendant United Healthcare Insurance Company

17  ("UHI") is a Connecticut corporation which conducts insurance operations throughout California.

18  UHI underwrites many of the UnitedHealthcare individual and family insurance products and

19  participates in the claims administration process related to policies insured and/or administered by

20  UHG and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon

21  alleges, that UHG is licensed and/or regulated by the CDI and/or the CDMHC to transact the

22  business of insurance in the State of California, is in fact transacting the business of insurance in

23  the State of California, and is thereby subject to the laws and regulations of the State of California.

24      5.      On information and belief, Defendant UHC of California d/b/a United Health Care

25  of California ("UHCC") is a California corporation located in Cypress, California.  UHCC

26  conducts administration process and coverage determinations on policies insured/administered by

27  UHG and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon

28  alleges, that UHCC is licensed and/or regulated by the CDI and/or the CDMHC to transact the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   business of insurance in the State of California, is in fact transacting the business of insurance in

2   the State of California, and is thereby subject to the laws and regulations of the State of California.

3         6.      On information and belief, Defendant UnitedHealthcare Service LLC ("UHSLLC")

4   is a Delaware limited liability company with its principal office in Cypress, California.  UHSLLC

5   provides administrative, financial and managerial services to UHG and its subsidiaries and

6   affiliates.  Plaintiff is informed and believes, and based thereon alleges, that UHSLLC is licensed

7   and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State

8   of California, is in fact transacting the business of insurance in the State of California, and is

9   thereby subject to the laws and regulations of the State of California.

10        7.      On information and belief, Defendant United Behavioral Health, Inc. ("UBH") is a

11  California corporation with its principal place in San Francisco, California.  UBH provides and/or

12  manages mental health and substance use disorder benefits for members/insureds of UHG and its

13  subsidiaries and affiliates, and is responsible for making benefit coverage determinations for

14  mental health and substance use disorder services that are provided to said members/insureds.

15  UBH sometimes operates as OptumHealth Behavioral Solutions and under the brand name Optum

16  U.S. Behavioral Health, California, doing business as OptumHealth Behavioral Solutions of

17  California.  Plaintiff is informed and believes, and based thereon alleges, that UBH is licensed

18  and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State

19  of California, is in fact transacting the business of insurance in the State of California, and is

20  thereby subject to the laws and regulations of the State of California.

21        8.      On information and belief, Defendant OptumInsight, Inc. ("OII") is a Delaware

22  corporation which conducts insurance operations throughout California. OII, formerly known as

23  Ingenix, provides health care data management for UBH and its subsidiaries and affiliates.

24  Plaintiff is informed and believes, and based thereon alleges, that OII is licensed and/or regulated

25  by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is

26  in fact transacting the business of insurance in the State of California, and is thereby subject to the

27  laws and regulations of the State of California.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

9.     On information and belief, Defendant Optum Services, Inc. ("Optum") is a Delaware corporation which conducts insurance operations throughout California.  Optum is a health services business serving the health care marketplace, including payers and health care providers, and provides shared claim handling and processing services for UHG and its subsidiaries and affiliates.  Optum sometimes operates as Optum and Optum Shared Solutions. Plaintiff is informed and believes, and based thereon alleges, that Optum is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

10.     On information and belief, Defendant Optum, Inc. ("OI") is a Delaware corporation which conducts insurance operations throughout California.  OI is a health services business serving the health care marketplace, including payers and UHG and its subsidiaries and affiliates, through its OptumHealth, OptumInsight and OptumRx businesses.  Plaintiff is informed and believes, and based thereon alleges, that OI is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

11.     On information and belief, Defendant Viant Inc. ("Viant") is a Nevada corporation which conducts insurance operations throughout California.  Viant provides health care payment solutions and offers auditing and reimbursement of behavioral health and substance use disorder claims and costs, as well as prepayment services such as treatment facility bill review and professional negotiation, on policies insured/administered by UHG and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon alleges, that Viant is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

12.     On information and belief, Defendant MultiPlan, Inc. ("MPI") is a New York corporation which conducts insurance operations throughout California.  MPI is a provider of

healthcare cost management solutions, specializing in providing claim cost management solutions for controlling the financial risks associated with health care bills on policies insured/administered by UHG and its subsidiaries and affiliates.  MPI also offers preferred provider organization network solutions for accessing hospitals, ancillary care facilities, treatment facilities, and health care professionals for the benefit and at the control and direction of UHG and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon alleges, that MPI is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

13.     Plaintiff does not know the true names and capacities of Defendants sued as Does 1 through 25, inclusive, and therefore sues such Defendants with such fictitious names.  Plaintiff will amend this Complaint, if necessary, to allege their true names and capacities when they have been ascertained.  Plaintiff is informed and believes that each of the named and fictitiously named Defendants are involved in and responsible for the events, transactions and/or occurrences alleged in the Complaint, as well as the herein alleged damages caused to Plaintiff.

14.     Plaintiff is informed and believes that, at all relevant times, each of the Defendants was and is the agent, servant, representative, undisclosed principal and/or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting in the scope of its authority as such agent, servant, representative, undisclosed principal and/or alter ego, and with the permission and consent of each of the other Defendants.

15.     Plaintiff is informed and believes that, at all relevant times, Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability.  Plaintiff is further informed and believes, that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another.  On information and belief, Plaintiff understands and believes that Defendants share the same common ownership,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    places of business, managements, and operate as a single enterprise.

2        16.    Plaintiff is informed and believes that, at all relevant times, each of the Defendants

3    formed and operated a conspiracy with each of the other Defendants to perform the acts alleged

4    herein, in furtherance of a common design to place profits over patients and damage substance use

5    disorder treatment providers, including Plaintiff, and with knowledge that the conduct alleged

6    herein of each of the Defendants constituted violations of law and provided substantial assistance

7    or encouragement to each other to so act against insured patients and substance use disorder

8    treatment providers, including Plaintiff.

9                        **BRIEF STATEMENT OF THE CASE**

10       17.    Plaintiff is an out-of-network alcoholism and substance use disorder treatment

11   provider.  Plaintiff is in the profession of helping individuals recover from alcoholism and

12   addiction and return to their families and communities as productive and contributing members of

13   society.  Plaintiff provided verified, preauthorized and covered mental health and substance use

14   disorder treatment to 74 individuals with health insurance that was sold, insured and/or

15   administered by Defendants.  The policies pay benefits for out-of-network substance use disorder

16   and mental health treatment, including, but not limited to, detoxification and residential treatment,

17   partial hospitalization ("PHP"), intensive outpatient ("IOP"), outpatient treatment ("OP"),

18   counseling and behavioral therapies, and clinical laboratory services, at seventy percent (70%) of

19   covered charges.

20       18.    Plaintiff obtained a written assignment of benefits from each of the 74 patient

21   insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiff not only

22   rights to payment of claims but to assert all rights and causes of action against Defendants in

23   connection with such claims.  Moreover, Plaintiff confirmed with Defendants through the required

24   verification of benefits process and, if necessary, the preauthorization process, that each of the

25   patient insureds and their respective treatments were covered by health insurance policies issued

26   and/or administered by Defendants.  At all times relevant herein, Defendants knew that Plaintiff

27   was treating, and would continue to treat, their insureds.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 6 -

19.     Defendants were obligated – under the law and the policies – to pay Plaintiff 70% of its billed charges for the mental health and substance use disorder treatment services that Plaintiff rendered to Defendants' insureds, all 74 of them, after subtracting any insured cost-sharing amounts up the annual out-of-pocket maximum.  Instead, Defendants engaged in unfair, unreasonable, illegal, incomplete and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiff a mere 9% of its billed charges for the treatment rendered to Defendants' insureds.  It was only after Plaintiff rendered the treatment at issue that Defendants refused to properly compensate Plaintiff for the services rendered to Defendants' insureds.

20.     During the claim submission and payment process, Defendants put Plaintiff on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Plaintiff, over and over again.  Plaintiff complied with Defendants' repetitive requests and despite being released from the audits and promised payment pursuant to the policies and/or repricing agreements, Defendants refused to properly reimburse Plaintiff for the treatment services provided to Defendants' insureds/members.  Defendants' audits, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny Plaintiff (and hundreds of other substance use disorder treatment providers) payment in accordance with the law and policies.

21.     As a result, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the policies in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, and moreover, Plaintiff is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

## AMERICA'S SUBSTANCE USE DISORDER EPIDEMIC

22.     Now, as never before, there is a critical need for access to treatment for substance use disorders.  The Substance Abuse and Mental Health Services Administration (SAMHSA) estimates that in 2014, 20.2 million adult Americans, or 8.4 percent of the adult population

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

suffered from a substance use disorder within the past year.[1]  According to the President's

Commission on Combatting Drug Addiction and the Opioid Crisis (November 2017), heroin

overdose deaths increased four-fold from 2010 to 2015, while overdose deaths due to prescription

opioids consistently outpaced even the disturbingly high heroin overdose rates.[2]  Drug overdoses

now cause more deaths than either car accidents or guns, and those suffering from substance use

disorders are at the highest risk.

23.     On average, 130 Americans die every day from an opioid overdose.  The opioid

crisis has and continues to destroy lives and devastate families and communities.[3]  It is the

deadliest drug crisis in United States history and it is only getting worse.[4]  In 2017 alone,

California lost 2,196 lives to the opioid epidemic.   Timely access to life-sustaining and life-saving

treatment and continuing care for substance use and mental health disorders is critical to

preventing these deaths and allowing people to achieve long-term recovery and to return to their

families, friends and communities as healthy, productive and contributing members of society.[5]

---

[1] *See* Rachel N. Lipari & Struther L. Van Horn, Trends in Substance Use Disorders in Adults 18 and Older (June 29, 2017), retrieved on May 23, 2019 from https://www.samhsa.gov/data/sites/default/files/report_2790/ShortReport-2790.html.

[2] *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at p. 32, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.

[3] *See* Centers for Disease Control and Prevention, Understanding the Epidemic, retrieved on May 28, 2019 from https://www.cdc.gov/drugoverdose/epidemic/index.html.

[4] *See* California Department of Public Health, Patterns of Opioid-Related Overdose Deaths in California, 2011-2017 (March 2019), retrieved on June 12, 2019 from https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/SACB/CDPH%20Document%20Library/Prescription%20Drug%20Overdose%20Program/Injury%20Data%20Brief%20Opioid%20Overdose%20Deaths%202011-2017_ADA.pdf.

[5] The human impact of the opioid epidemic – from babies born dependent, the emotional toll on individuals with a substance use disorder, and that of their families and communities, to the tens of thousands of lives cut short each year – has been tremendous.  Now, reports show that the economic impact has been just as shocking, with the drug crisis costing the U.S. economy $1 trillion since 2001 and likely to cost the economy an additional $500 billion by 2020 if the current rates of addiction and overdose remain steady.  See Altarum, Solutions to Advance Health: Economic Toll of Opioid Crisis in U.S. Exceeded $1 Trillion Since 2001 (February 13, 2018), retrieved on June 5, 2019 from https://altarum.org/news/economic-toll-opioid-crisis-us-exceeded-1-trillion-2001.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

24. Addiction is recognized as a chronic, relapsing brain disorder characterized by compulsive drug seeking, continued use despite harmful consequences, and long-lasting changes in the brain. Addiction is considered both a complex brain disorder and a mental illness. The brain changes can be long lasting and can lead to many harmful, often self-destructive, behaviors. Addiction is the most severe form of a full spectrum of substance use disorders, and is a medical illness caused by repeated misuse of a substance or substances.[6] Without treatment and engagement in recovery activities, addiction is progressive and can result in unemployment, homelessness, disability and premature death.

25. Substance use disorder treatment is difficult and the challenges of recovery from addiction are many, which can involve cycles of recurrence and remission before long-term recovery is realized. Timely access to treatment and continuing care, including detoxification and residential treatment, intensive outpatient and outpatient services, counseling and behavioral therapies, social support and supportive sober living environments, are critical for people to recover from addiction and reclaim active and meaningful lives. Clinical laboratory services are recognized as an appropriate and important diagnostic procedure in substance use disorder and mental health treatment as such services promote prevention, diversion, early detection, and lifelong recovery from addiction. Such testing is designed to provide accurate results that help physicians and treatment clinicians create a scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes testing for accurate prescription therapy and medication assisted treatment.[7]

---

[6] *See* National Institute of Drug Addiction, The Science of Drug Use and Addiction: The Basics, retrieved on May 29, 2019 from https://www.drugabuse.gov/publications/media-guide/science-drug-use-addiction-basics; *see also*, American Society of Addiction Medicine, Public Policy Statement: Definition of Addiction, retrieved on June 13, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1definition_of_addiction_long_4-11.pdf?sfvrsn=a8f64512_4.

[7] *See* American Society of Addiction Medicine, Public Policy Statement on Drug Testing as a Component of Addiction Treatment and Monitoring Programs and in other Clinical Settings, retrieved on May 29, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1drug-testing---clinical-10-10.pdf.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

26.     Families and individuals purchase health insurance to help cover the costs of health care, including the costs of substance use disorder and mental health treatment.  Health insurance is supposed to provide people with peace of mind and security, and provide them with access and options for life-sustaining and life-saving health care while preventing families and individuals from experiencing financial crises, such as bankruptcy or home foreclosure, or being forced to choose between paying for rent, utilities and food or paying for necessary health care costs.

27.     Traditionally, insurers and employers have covered treatment for mental health conditions, including substance use disorders, less favorably than treatment for physical health conditions, including higher cost-sharing obligations for patients, more restrictive limits on the number of inpatient days and outpatient visits, and more onerous prior authorization requirements. To address this unequal treatment, Congress first passed a mental health parity law in 1996, and many states followed suit in the following decade by passing laws of their own.  Among other limitations, however, the 1996 act did not address the treatment of substance use disorders. Congress addressed this gap in passing the historic Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), 42 U.S.C. § 300gg-26, which, among other things, prohibits most plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., from imposing different treatment limits, cost-sharing and in-network and out-of-network coverage on mental health and substance use disorder treatment than are imposed on other medical and surgical services.[8]  Furthermore, ERISA requires fiduciaries to act solely in the interests of plan participants and beneficiaries, and to decide claims for health care benefits in accordance with plan documents and under a full and fair procedure.

28.     The Patient Protection and Affordable Care Act of 2010 ("PPACA"), 42 U.S.C. §§ 18001, *et seq.*, also known as the Affordable Care Act or Obamacare, requires a range of health

---

[8]  California has its own Mental Health Parity Act ("MHPA"), codified in Insurance Code section 10144.5 and Health and Safety Code section 1374.72, which, like the MHPAEA, requires mental health care coverage to be provided "under the same terms and conditions applied to other medical conditions."  California law also requires health care plans to "provide all covered mental health and substance use disorder benefits in compliance with the [MHPAEA] and all rules, regulations, and guidance issued" pursuant to federal laws.  Cal. Ins. Code §§ 10144.4, 10112.27; Cal. Health & Safety Code § 1374.76.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  polices, both inside and outside of the exchanges, to provide a core package of essential health

2  benefits including mental health and substance use disorder services and laboratory services.  42

3  U.S.C. § 18022.  The PPACA extends the impact of the MHPAEA so that many health policies

4  must offer coverage for mental health and substance use disorder services and laboratory services

5  with at least an equal level of benefits as the policies offer for the treatment of medical and

6  surgical benefits.  However, as President Donald J. Trump's commission on the opioid crisis wrote

7  in its November 2017 report, "health insurers are not following the federal law requiring parity in

8  the reimbursement for mental health and addiction [;] [t]hey must be held responsible."[9]

### DEFENDANTS' SCHEME TO DENY ACCESS AND COVERAGE FOR CRITICALLY-NEEDED SUBSTANCE USE DISORDER TREATMENT

11        29.      Despite the above statutory requirements, and the obvious individual and public

12  health interests in timely access to and coverage for substance use disorder and mental health

13  treatment, Defendants UHG individually and through its various wholly-owned and/or controlled

14  subsidiaries, controlled agents and/or undisclosed principals, including, but not limited to, UHS,

15  UHI, UHCC, UHSLLC, UBH, OII, Optum, OI, Viant and MultiPlan (collectively "Defendants" or

16  "UnitedHealthcare"), are engaged in unfair, unreasonable, incomplete and systematic policies,

17  practices and decisions (against the substance use disorder treatment profession as a whole and

18  Defendants' members/insureds in need of substance use disorder treatment) that have and continue

19  to result in the unlawful denial, underpayment, delay and/or flat-out refusal to authorize and

20  decide access, coverage and claims for substance use disorder and mental health treatment of

21  patients whose policies promise, and the law requires, access to and coverage for such services

22  and benefits.  Defendants' systematic practices have and continue to result in restrictive prior

23  authorization requirements and restrictive limits on the number of substance use disorder treatment

24  days and tests.  Defendants' access, coverage and claims-handling policies, practices and decisions

---

[9] *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at pp. 9 and 122, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.  Roster of Commissioners include Governor Chris Christie, Chairman, Governor Charlie Baker, Governor Roy Cooper, Congressman Patrick J. Kennedy, Professor Bertha Madras, Ph.D., Florida Attorney General Pam Bondi.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

are imposing unlawful barriers between patients and life-saving substance use disorder treatment they desperately need.  And Defendants are doing this in the middle of an opioid epidemic!  Defendants' impermissible barriers to substance use disorder treatment must be removed and Defendants must be held responsible for placing profits over patients in a life and death situation.

30.     Defendants' substance use disorder and mental health access, coverage and claims-handling policies, practices and decisions (against the substance use disorder treatment profession as a whole and Defendants' members/insureds in need of substance use disorder treatment) as a whole violate the law and the policy documents.  For instance, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to authorize access and coverage for detoxification and residential substance use disorder treatment because a facility does not have an optional state incidental medical license.[10]  Plaintiff is also informed and believes, and based thereon alleges, that Defendants require preauthorization for PHP and IOP treatment and then limits the number of treatment days at each level of care.[11]  Plaintiff is further informed and believes, and based thereon alleges, that Defendants reimburse PHP and IOP levels of care at nominal percentages of the covered charges.  Moreover, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to reimburse OP claims and refuse to reimburse claims for breathalyzer tests, counseling services and services of treatment case managers.  Further, Plaintiff is informed and believes, and based thereon alleges, that Defendants utilize

---

[10]  Cal. Health & Safety Code § 11834.026(a).  Moreover, California law provides that health insurers may not "in any manner … direct, participate in, or control the selection of the hospital or health facility … from who the insured secures services … except that an insurer may negotiate and enter into contracts for alternative rates of payment with institutional providers, and offer the benefit of these alternative rates to insures who select these providers."  Cal. Ins. Code § 10133.

[11]  Under California law, once a health insurer authorizes a specific type of treatment covered under a plan and the provider has provided that treatment in good faith and pursuant to the authorization, the insurer cannot rescind or modify that authorization for any reason.  Cal. Ins. Code § 796.04; Cal. Health & Safety Code § 1371.8. Moreover, California law requires that where health insurers cannot provide their members/insureds access to needed healthcare providers on an "in-network" basis, the insurers shall pay any "out-of-network" provider the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its billed charges.  Cal. Ins. Code § 10133.5; Cal. Code Regs. tit. 10, § 2240.1. Further, health insurers are required to reimburse health care providers at almost 100 percent of the billed charges for emergency services.  Cal. Ins. Code § 10112.7; Cal. Health & Safety Code § 1317; Cal. Code Regs., tit. 28, § 1300.67.

illegal and overly restrictive medical necessity criteria and guidelines in order to deny claims and profit over the health and safety of their members/insureds.  In addition, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to pay for claims at all levels of care based on purported overpayments for substance use disorder treatment of other patients covered by other UnitedHealthcare policies.[12]  Plaintiff is also informed and believes, and based thereon alleges, that Defendants refuse to pay for clinical laboratory claims as either beyond the numerical limitation and/or simply not covered or reimbursable.  Plaintiff is further informed and believes, and based thereon alleges, that Defendants make payments on claims based on inapplicable Medicare rates and demand refunds on other claims that it asserts should have been paid at inapplicable Medicare rates.[13]

31.     Plaintiff is informed and believes, and based thereon alleges, that Defendants' objective is to deny their members/insureds access to and coverage for critically-needed substance use disorder detoxification and residential treatment, limit the number of authorized PHP and IOP substance use disorder treatment days, rush their members/insureds into OP substance use disorder treatment, refuse to reimburse OP claims, deny and/or underpay all other substance use disorder and mental health treatment claims, and then demand refunds on paid claims and subject the remaining claims to improper cross-plan offsets and inapplicable Medicare rates, all in violation of the law and the policy documents and to the detriment of their members/insureds in need of life-saving substance use disorder treatment and to the detriment of substance use disorder treatment providers, like Plaintiff.

**DEFENDANTS' SCHEME SPECIFIC TO PLAINTIFF**

32.     Plaintiff is an out-of-network alcoholism and substance use disorder treatment provider.  Plaintiff is in the profession of helping individuals recover from alcoholism and

---

[12]   *See Peterson v. UnitedHealth Group, Inc.* (8th Cir. 2019) 913 F.3d 769, 776 (rejecting UnitedHealthcare's interpretation of its policies as permitting cross-plan offsetting).

[13]   The California Department of Insurance found and concluded in its July 23, 2018 Order to Show Cause *In the Matter of the Certificate of Authority of Health Net Life Insurance Company* (CDI File No. UPA-2016-00005), that Medicare does not provide a rate for inpatient or outpatient substance use disorder treatment provider charges and that substituting a bundled per diem Medicare rate for such treatment charges violates state and federal parity laws.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

addiction and return to their families and communities as productive and contributing members of society.  Plaintiff provided verified, preauthorized and covered mental health and substance use disorder treatment to 74 individuals with health insurance that was sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network substance use disorder and mental health treatment at seventy percent (70%) of covered charges.

33.     Plaintiff obtained a written assignment of benefits from each of the 74 patient insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  Moreover, Plaintiff confirmed with Defendants through the required verification of benefits process and, if necessary, the preauthorization process, that each of the patient insureds and their respective treatments were covered by health insurance policies issued and/or administered by Defendants.  At all times relevant herein, Defendants knew that Plaintiff was treating, and would continue to treat, their insureds.

34.     The treatment and claim documents concerning each of the subject 74 patient insureds treated by Plaintiff contain personal health and treatment information protected by law from public disclosure pursuant to, *inter alia*, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Once a Protective Order is in place, Plaintiff will produce its claims data report to Defendants.  The report will set forth the subject patient's initials and member identification number, the service start and end dates, the amounts billed and paid, and the outstanding balance.  Plaintiff is informed and believes that with Plaintiff's company name and TIN, Defendants can access a trove of information on each of Plaintiff's patients, including, but not limited to, the patient's name, date of birth, residence address, gender, family relationships, name and type of insurance plan/policy and state of issuance, dates of coverage, dates of service, types and levels of care provided, billed amounts claimed, explanations of benefits paid or denied, and appeals and grievances regarding claims denied.  Plaintiff is informed and believes that the information available to Defendants through Plaintiff's company name and TIN is sufficient enough to apprise Defendants of the substance of Plaintiff's claims.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

35.     Defendants were obligated – under the law and the policies – to pay Plaintiff 70% of its billed charges for the mental health and substance use disorder treatment services that Plaintiff rendered to Defendants' insureds, all 74 of them, after subtracting any insured cost-sharing amounts up the annual out-of-pocket maximum.  Instead, Defendants engaged in unfair, unreasonable, illegal, incomplete and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiff a mere 9% of its billed charges for the treatment rendered to Defendants' insureds.  It was only after Plaintiff rendered the treatment at issue that Defendants refused to compensate Plaintiff for the services rendered to Defendants' insureds.

36.     During the claim submission and payment process, Defendants put Plaintiff on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Plaintiff, over and over again.  Plaintiff complied with Defendants' repetitive requests and despite being released from the audits and promised payment pursuant to the policies and/or repricing agreements, Defendants refused to properly reimburse Plaintiff for the treatment services provided to Defendants' insureds/members.  Defendants' audits, repetitive document and information requests and promises of payments were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny Plaintiff (and hundreds of other substance use disorder treatment providers) payment in accordance with the law and policies.

37.     As a result, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the policies in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, and moreover, Plaintiff is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

38.     Defendants' conduct has had a severe and adverse effect on not only Plaintiff, but also Defendants' insureds and the substance use disorder treatment profession as a whole. Defendants' conduct has placed the lives of their insureds that are struggling with addiction in jeopardy, exposing the insured patients and their families to significant financial and health risk,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   while simultaneously destroying or significantly damaging Plaintiff and all similarly situated

2   alcoholism and substance use disorder treatment centers.

3       39.     Defendants' conduct breached agreements with Plaintiff which arose when

4   Plaintiff's patients assigned benefits to Plaintiff in writing, and when Defendants confirmed

5   coverage and, when necessary, gave prior approval for treatment services Plaintiff provided to

6   Defendants' insureds.  Defendants' violated the implied covenant of good faith and fair dealing in

7   said insurance contracts, rendering its actions in "bad faith."

8       40.     Upon information and belief, Plaintiff alleges that Defendants' conduct was wanton

9   and willful, and undertaken to improve their balance sheet by placing profits over patients in a life

10  and death situation.

11      41.     Defendants' practices were also unfair, fraudulent and unlawful under California's

12  Unfair Competition Law ("UCL") in that, as a part of their scheme to not pay or underpay

13  Plaintiff, and to prevent Plaintiff from learning of their scheme for as long as possible, they

14  violated their claims handling obligations under California law by providing either no, baseless,

15  false, or dilatory reasons for not paying or underpaying Plaintiff.  Plaintiff is thereafter entitled to

16  injunctive relief and restitution under the UCL.

17      42.     Defendants' practices were similarly unfair, fraudulent and unlawful under state

18  and federal law in that they violate the Mental Health Parity and Addiction Equity Act

19  ("MHPAEA"), while simultaneously constituting common law bad faith.  The MHPAEA is an

20  antidiscrimination statute intended to ensure that coverage of mental health and substance abuse

21  care (such as Plaintiff provides) is in "parity" with coverage of medical and surgical care.

22  Defendants and each of them have systematically treated drug and alcoholism treatment and

23  treatment providers differently than medical and surgical providers in California.

24      43.     Defendants' practices were likewise unfair, fraudulent and unlawful under state

25  and federal law in that they violate the Patient Protection and Affordable Care Act ("PPACA"),

26  which requires, among other things, insurers to provide benefits for mental health and substance

27  abuse treatment, with no pre-existing condition exclusions and no annual or lifetime dollar amount

28  limits on coverage of such treatment services.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

44.     Defendants' actions were further unfair, fraudulent and unlawful in that they violated other well established public policies, including those set forth in the California Unfair Insurance Practices Act ("UIPA"), as set forth in California Insurance Code sections 790, et seq.

45.     Defendants' insureds were also unlawfully, unfairly and fraudulently misled into believing that the insurance policies would provide coverage for care supplied by out-of-network alcoholism and substance abuse treatment providers such as Plaintiff.

46.     Defendants, and each of them, never intended to provide the coverage mandated by the insurance policies issued to their insureds and instead intended to not pay or to underpay treatment centers throughout California, including Plaintiff.  Defendants, and each of them, have ignored Plaintiff's efforts to recover payment for services provided, placing Plaintiff in the untenable position of being forced to file this Complaint in order to recover payments due under the Defendants' insurance policies and the law.

47.     Plaintiff is seeking relief under its direct rights, written assigned rights from patients cheated out of their insurance benefits by Defendants, and as third-party beneficiaries of its patients' policies issued and/or administered by Defendants.

48.     Defendants have also tortuously breached the implied covenant of good faith and fair dealing in the underlying policies issued and/or administered by Defendants, which rights have been assigned to Plaintiff.

49.     The treatment services in question were provided by Plaintiff to patients who at all relevant times had health insurance for the services that Plaintiff provided and the policies of health insurance were issued and/or administered by Defendants, and each of them, or at the direction and under the control of Defendants.

50.     Defendants, and each of them, caused the events complained of herein to occur in the County of Orange and throughout the State of California.

51.     Plaintiff provides drug and alcoholism treatment services to those in the process of recovering from alcoholism and substance abuse.  Plaintiff's treatment includes a range of services, including PHP, IOP, OP, counseling, behavioral therapies, case management services, and clinical laboratory services.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

52.     Defendants, and each of them, developed and marketed the subject health insurance policies to include coverage for services provided to their insureds by in-network providers ("INP") and out-of-network ("ONP") like Plaintiff.

53.     The insurance policies issued and/or administered by Defendants and each of them, are industry standard indemnity health insurance policies that provide richer benefits (less out-of-pocket expense for insureds) for treatment and services that are obtained from INPs.  Such providers contract with Defendants to become part of their "network" and generally agree to accept a set reduced rate of reimbursement in exchange for steerage of patients to their practices or facilities and payment within specified contractual timeframes.

54.     The insurance policies issued and/or administered by Defendants, and each of them, provide for a reimbursement rate for ONP services at a lesser percentage of the overall billed charges than the 100% reimbursement rate for INP services, less the insured's co-pay, co-insurance and deductible, generally resulting in greater out-of-pocket expenses for Defendants' insureds.

55.     California law requires that the policy forms, such as those utilized in the insurance policies issued by Defendants and each of them, be filed with and approved by the CDI, and are generally not to be withdrawn from the insurance marketplace without an insurer meeting specific conditions.

56.     The insurance policies issued and/or administered by Defendants, and each of them, provide coverage for but not limited to the following ONP drug and alcoholism treatment services: outpatient office visits (psychological evaluation or therapeutic session in an office or other outpatient setting (including individual and group therapy sessions, medication management and drug therapy monitoring); outpatient services other than office visits (psychological and neuropsychological testing, intensive outpatient care program, day treatment, partial hospitalization and other outpatient services); inpatient facility; physician visit to hospital, behavioral health facility or residential treatment center; toxicology and clinical laboratory testing and screening; and inpatient detoxification.

57.     The insurance policies issued and/or administered by Defendants, and each of them, provide for the payment of services with an INP at 100% of the provider's billed charges set by contract, less the insured's co-pay, co-insurance and deductible.  Services with an ONP are reimbursed at a lesser percentage of the provider's billed charges.

58.     The insurance policies issued and/or administered by Defendants, and each of them, provide that Defendants were required to remit claim payments directly to providers when the insured assigns his or her benefits to the provider in writing.

59.     When required by the insurance policies issued and/or administered by Defendants, and each of them, Plaintiff's standard operating procedure was to obtain prior authorization for certain drug and alcohol addiction treatment for Defendants' insureds.  Plaintiff's standard operating procedure also included obtaining a verification of benefits from the patient's insurance company, including Defendants, to ensure the patient is covered by the insurer and that the treatment is a covered benefit under the policy.

60.     In communication with Plaintiff, including telephone calls requesting verification of benefits, Defendants, and each of them, represented to Plaintiff that the services provided to Defendants' insureds would be reimbursed at the fully billed charges.

61.     Specifically, for each of the 74 patients whose treatments are at issue, Plaintiff contacted Defendants by phone and/or in writing before beginning such treatments.  Plaintiff learned that the patients were validly covered by their policies with Defendants, and Plaintiff informed Defendants of the proposed treatments of Defendants' insureds, including the specific services to be provided and the billing codes for same.  Plaintiff informed Defendants to the effect that Plaintiff would agree to accept the maximum allowable fee under those polices for Plaintiff's services, which fee is equal to 70% of Plaintiff's fully-billed charges, after subtracting the insured's co-insurance (30% of the billed charges) and deductible, up to the patient's annual out of pocket maximum.  Defendants agreed to such terms, after which Plaintiff began treating Defendants' insureds.

62.     Based upon the language of the insurance policies issued by defendants, and each of them, and upon obtaining required prior authorization and verification of benefits when

necessary, and valid written assignments, Plaintiff and its patients insured by Defendants reasonably expected that claims would be paid promptly and consistent with the law and the terms of the policies and/or the herein representations made by Defendants, and each of them.

63.     Notwithstanding the required prior authorization and/or verification of benefits when necessary, and valid written assignments, Plaintiff's claims for the majority of drug and alcoholism treatment provided to Defendants' insureds have not been paid properly and require substantial interest payments for violation of the applicable insurance policies and California insurance and managed health care laws providing for the prompt payment of claims.

64.     Plaintiff is entitled to payment for its services at the proper reimbursement rates, pursuant to valid written assignments from its patients or, at a minimum, under a theory of quantum meruit.

65.     While the breaches alleged herein involved policies issued and/or administered by one or more of the Defendants, each Defendant, upon information and belief, conceived, directed, approved, or aided and abetted the others in this bad faith scheme.

66.     In California, a health insurer must provide or arrange for the provision of access to health care services in a timely manner.  Most health insurers, including Defendants, and each of them, seek to satisfy this duty by providing an adequate network of INPs for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

67.     A "network gap" or "network insufficiency" exists in a health insurer's network when either the health insurer, or the patient, is unable to secure the services of an INP for necessary treatment.  If a network gap exists, California law requires the insurer to secure the services of an ONP so the insurer can meet its legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.  In addition, emergency services, and sometimes urgently needed services, must be covered by an insurer with an ONP if the insurer has no network provider to provide the needed services.

68.     California law does not give a health insurer the right or ability to unilaterally set the price it will pay an ONP that provides services to one of the insurer's insureds in order to fill a

1  network gap.

2        69.     Upon information and belief, there was a network gap with respect to drug and

3  alcoholism treatment centers in California to serve the tremendous number of insured patients

4  needing such treatment, due in large part to the opioid addiction epidemic in California, and across

5  the nation.

6        70.     Upon information and belief, there was a network gap with respect to drug and

7  alcoholism treatment centers required to treat Defendants' insureds, which caused some of

8  Defendants' insureds to obtain the services of Plaintiff, an ONP.

9        71.     In the managed health care industry, a "verification" of an insured's coverage for

10  the contemplated treatment, or an "authorization" for such treatment, is understood by both the

11  insurers and providers to be an agreement by the insurers to pay for such treatment.  For INPs, it is

12  an agreement by the insurers to pay those providers based on previously negotiated rates between

13  the insurer and those providers.  For ONPs, it is an agreement by the insurers to pay those

14  providers at their fully billed charges.

15        72.     Plaintiff, as an ONP, after obtaining preauthorization and/or verification of

16  coverage when necessary, provided necessary treatment to Defendants' insureds due to a network

17  gap and is therefore entitled to recover payment for its services at its fully billed charges.

18        73.     While Plaintiff has repeatedly demanded payment in full for the services provided

19  to Defendants' insureds, Defendants, and each of them, have denied, delayed and incorrectly

20  issued payment for Plaintiff's claims even after requested records were copied, sent and received

21  by Defendants.

22        74.     Defendants, and each of them, would respond to Plaintiff's inquiries about the

23  delay or errors in payment with false promises that payment would be made and/or a multitude of

24  excuses.  Regardless of the excuses made by Defendants, and each of them, Plaintiff did not

25  receive proper claim payments for drug and alcoholism treatment provided to Defendants'

26  insureds.

27        75.     Upon information and belief, Defendants, and each of them, realized an immediate

28  positive financial impact as a result of their misconduct alleged herein, cessation of drug and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 21 -
COMPLAINT

1  alcoholism treatment claims payments, and forcing treatment centers, like Plaintiff, through an

2  expensive, administratively burdensome and indiscriminate audit, and not paying claims that are

3  due and owing under the policies.

4      76.    Upon information and belief, Defendants, and each of them, undertook the actions

5  alleged herein with the intent and designed purpose of not paying claims that are due and owing

6  under the law and the policies, as part of a pattern and practice by Defendants, and each of them,

7  that is unlawful, unfair and fraudulent, and thus violates, *inter alia*, California's UCL, state and

8  federal regulations and the MHPAEA and PPACA.

9      77.    Upon information and belief, Defendants, and each of them, undertook the actions

10  alleged herein, in violation of numerous provisions of California's UIPA, without limitation,

11  numerous subsections of Cal. Ins. Code § 790.03, including misrepresentations to patients and

12  providers, failing to acknowledge and act reasonably promptly in response to communications,

13  failing to adopt and implement reasonable standards for investigations, not attempting in good

14  faith to effectuate prompt, fair and equitable settlement of claims, and compelling providers to

15  institute litigation to recover policy benefits owed.

16      78.    Upon information and belief, Defendants, and each of them, developed a

17  mechanism through their superior economic might to oppress treatment centers, including

18  Plaintiff, forcing Plaintiff and other treatment centers into a position where they can no longer

19  afford to accept patients insured by Defendants and resulting in significant and undue hardship to

20  Plaintiff (and the patient-insureds) and interference with Plaintiff's contractual relationships with

21  its patients and its prospective economic advantage.  And Defendants, and each of them, are is

22  doing this in the middle of an opioid epidemic!

### **FIRST CAUSE OF ACTION**

**Breach of Written Contract**

**Against All Defendants**

26      79.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs

27  above as if fully set forth herein.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

80.     Plaintiff provided verified, preauthorized and covered mental health and substance use disorder treatment to 74 individuals with health insurance that was sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network substance use disorder and mental health treatment, including, but not limited to, detoxification and residential treatment, PHP, IOP, OP, counseling and behavioral therapies, and clinical laboratory services, at seventy percent (70%) of covered charges.  Plaintiff confirmed with Defendants through the required verification of benefits process and, if necessary, the preauthorization process, that each of the patient insureds and their respective treatments were covered by health insurance policies issued and/or administered by Defendants.  At all times relevant herein, Defendants knew that Plaintiff was treating, and would continue to treat, their insureds.

81.     As a condition of providing such treatment, Plaintiff obtained a written assignment of benefits from each of the 74 patient insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  As assignee of the patients' benefits under the policies, Plaintiff is entitled to be paid for the services rendered based on the existence and terms of the insurance policies that cover the patients.  Each of Defendants' policies issued to the insured patients treated by Plaintiff, in relevant part, provide for the same coverages, reimbursement rates and coinsurance percentages, deductibles and out-of-pocket maximums.

82.     The policies provide in relevant part that benefits are payable for the covered substance use disorder services provided by Plaintiff, and subject to specific conditions, exclusions and limitations, none of which apply, and applicable maximum reimbursement amounts.  As stated herein, benefits for a covered expense for covered services, including mental health and substance use disorder treatment and laboratory services are paid at 70% of the billed charges after subtracting any insured cost-sharing amounts up the annual out-of-pocket maximum.

83.     After providing covered services to Defendants' insureds, Plaintiff submitted over 14,000 claims for reimbursement to Defendants pursuant to the terms of Defendants' policies.  Defendants were obligated to pay Plaintiff 70% of its billed charges, after subtracting the insured's deductible.  Instead, Defendants paid Plaintiff a mere 9% of the covered expenses for the claims.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

84.     Plaintiff is also an express and intended third-party beneficiary of the written contracts (the policies) between Defendants and the insured patients treated by Plaintiff, and is entitled to recover on that basis.

85.     Defendants and their insureds intended that Plaintiff directly benefit from the contracts and the contracts indicate the intent to benefit Plaintiff by payment for the services provided to Defendants' insureds.

86.     The policies issued and/or administered by Defendants provide their insureds the option of seeking treatment with Defendants' INPs or choosing their own ONPs, like Plaintiff. The policies also specifically provide for the payment of benefits for ONPs, like Plaintiff, who provide medically necessary services.  Although the policies issued and/or administered by Defendants may incentivize their insureds to seek treatment with INPs, those policies explicitly express Defendants' intent to benefit ONPs, like Plaintiff.

87.     The policies issued and/or administered by Defendants further express Defendants' intent to benefit ONPs, like Plaintiff, insofar as the policies expressly incorporate by reference California regulations requiring insurers, like Defendants, to provide an adequate network of INPs and, in the event of a "network inadequacy" or "network gap," requiring insurers, like Defendants, to pay for the required care with available and accessible ONPs, like Plaintiff,  with the patient responsible for paying only cost-sharing in an amount equal to the cost-sharing they would have paid for provision of that or a similar service by an INP (Cal. Code Regs. tit. 10, § 2240.1(e)).

88.     Defendants' intent to benefit ONPs, like Plaintiff, by the terms of the insurance policies is further evidenced by the conduct of the Defendants, who issued payments to ONPs, including Plaintiff, for the medically necessary services rendered to their insureds, in accordance with the terms of the policies, until in or around 2015, when the Defendants, as part of their scheme to decrease their costs on mental health and substance use disorder treatment claims, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder services, including Plaintiff.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

89.     Plaintiff provided covered, verified, preauthorized and necessary treatment to Defendants' insureds at great expense to Plaintiff.  After providing those services, Plaintiff submitted appropriate claim forms to Defendants, requesting compensation for the care and treatment provided to the patient-insureds, and complied with all terms and conditions of the policies.

90.     Defendants and each of them, however, failed and refused to comply with their obligations under the law and the policies and either paid no or inadequate benefits for the treatment services Plaintiff provided to Defendants' insureds.

91.     Upon information and belief, there is no legally operative term in the policies that would justify defendants' failure to pay the full benefits owed Plaintiff for services provided to the insured-patients in good faith.

92.     Plaintiff has performed all duties required of it under the insurance policies, except as excused by Defendants' material breaches.

93.     Defendants and each of them, however, breached the insurance policies by the conduct alleged herein, including without limitation withholding of proper claim payments, making unreasonable demands on Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed.

94.     As a direct and proximate result of defendants' breach, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants, and each of them.  Under this First Cause of Action for breach of written contract, Plaintiff seeks to recover the benefits payable under the policies between the patients and Defendants, or equal to approximately 70% of Plaintiff's fully-billed charges.

95.     As a direct and proximate result of Defendants' breach, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.  Plaintiff is also entitled to statutory and prejudgment interest against Defendants.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants

96.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

97.    As alleged herein, Plaintiff is an assignee and intended beneficiary of its patients' policies issued and/or administered by Defendants and the rights conferred thereunder.

98.    Each policy contains an implied covenant of good faith and fair dealing that obligates each party to do nothing to injure the right of the other party to receive the benefits of the agreement.

99.    Plaintiff provided covered, verified, preauthorized and necessary alcoholism and substance abuse treatment services to Defendants' insureds with the understanding and expectation that Defendants would act in good faith and deal fairly with Plaintiff pursuant to the policies.

100.    Defendants and each of them, however, tortuously breached the policies and the implied covenant of good faith and fair dealing by the conduct alleged herein, including without limitation withholding of proper claim payments from Plaintiff, making unreasonable demands on Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed to Plaintiff, fraudulently representing to Plaintiff that Defendants would pay the claims in accordance with the policies, fraudulently misrepresenting the terms of the policies, and forcing Plaintiff to initiate litigation to recover the policy benefits owed, failing to abide by the rules and regulations promulgated by the CDI and the DMHC, and by other acts and omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

101.    Upon information and belief, the conduct of Defendants, and each of them, as alleged herein constitutes part of an institutional illegal pattern and practice of bad faith and unlawful insurance practices.

- 26 -
COMPLAINT

50

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

102.    Defendants' conduct constitutes a continuing tort that is causing Plaintiff continued damages.

103.    The conduct of Defendants and each of them as alleged herein was undertaken by Defendants' officers, directors or managing agents who were responsible for supervision, operation, reports, communication and decisions.  The conduct of said officers, directors and managing agents, and of other employees, representatives and agents, was undertaken on behalf of Defendants, which had advance knowledge of the action and conduct of said individuals whose conduct and actions were authorized, ratified and approved by officers, directors or managing agents of Defendants.

104.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and prejudgment interest against Defendants, and each of them.  Under this Second Cause of Action for breach of the implied covenant of good faith and fair dealing, Plaintiff seeks to recover the benefits payable under the policies between the patients and Defendants, or equal to approximately 70% of Plaintiff's fully-billed charges, as well as tort damages that arise from Defendants' bad faith breach.

105.    As a direct and proximate result of Defendants' breach, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

106.    As a direct and proximate result of defendants' breach, Plaintiff has incurred attorney fees and costs as a result of efforts to secure the insurance benefits owed, in an amount according to proof.

**THIRD CAUSE OF ACTION**

**Breach of Implied Contract**

**Against All Defendants**

107.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

108.     Plaintiff, as an ONP, provided alcoholism and substance abuse treatment services to patients who were insured under insurance policies issued and/or administered by Defendants, and each of them, preceded by authorization and verification of benefits by Defendants.

109.     Consistent with the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation, which was fully and clearly understood by Defendants and each of them, that Plaintiff would be compensated for such services.

110.     Plaintiff, as an ONP, must often decide on short notice whether and to what extent it can treat a patient.  Requiring such providers to, in effect, make an on-the-spot legal analysis whether the statements made by healthcare plans to authorize treatment and verify benefits constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would jeopardize the safety of patients, and impose an unfair risk on healthcare providers that they would not get paid for providing treatments that are medically necessary.  For this reason, the California Legislature enacted Health & Safety Code section 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider **shall not rescind or modify this authorization after the provider renders the health care service** in good faith and pursuant to the authorization for any reason, including, but not limited to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility…. (Emphasis added.)

111.     In addition to reliance upon the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct of Defendants and each of them.

112.     Defendants and each of them were fully aware of the dollar amounts charged by Plaintiff for the subject treatment and had previously authorized and verified benefits for such treatment.  Defendants and each of them were also aware that Plaintiff did not provide the subject treatment for free, and that Plaintiff would submit its total billed charges for said services and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

expect to be compensated.  Defendants, and each of them, also knew Plaintiff was not a contracted in-network provider who had agreed to accept any pre-negotiated contract rates.  With such knowledge, Defendants and each of them issued payments for the subject treatment to ONPs, including Plaintiff.

113.    Whereas payment by Defendants and each of them was always sporadic and often inadequate, in or around 2015, and as part of their scheme to decrease their costs of mental health and substance use disorder treatment claims, Defendants, and each of them, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder services, including Plaintiff.

114.    Accordingly, by virtue of Defendants, and each of them, authorizing and verifying benefits for the subject treatment provided by Plaintiff; by the trade custom and usage associated with prior authorization and verification of benefits; and by Defendants' prior course of conduct, the parties thus created an implied contract, through words and conduct, that Defendants and each of them would pay Plaintiff for treatment and services rendered to Defendants' insureds, for the reasonable value of such treatment and services.

115.    Defendants are also liable to pay Plaintiff for treating the 74 patients and the claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove.  California law requires that where health insurance carriers such as Defendants cannot provide their insureds access to the needed healthcare providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its fully-billed charges (since the patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

116.    Upon information and belief, there was a network gap with respect to the 74 patients payments for whom are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the substance

abuse treatment and rehabilitation required by those patients.  Indeed, if Defendants objected to their insureds obtaining treatment from an ONP such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an INP?  The only reasonable inference is that there were no such INP's who were in the position to treat the patients at issue.  As a result, those patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California healthcare as it pertains to a "network gap."

117.    Plaintiff has performed all duties required of it under the implied contract, except as excused by Defendants' material breaches.

118.    Defendants and each of them, however, breached the implied contract by the conduct alleged herein, including without limitation the withholding of proper claim payments.

119.    As a direct and proximate result of defendants' breach, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants.  Plaintiff is seeking in this Third Cause of Action to recover reimbursements regardless of what the policies between Defendants and their insureds would have provided for the same treatments and services; namely, the reasonable value of such services and treatments, and/or the payments owing to Plaintiff under California law based on the existence of a "network gap" as to some or all of the 74 patients at issue.

120.    As a direct and proximate result of Defendants' breach, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

## FOURTH CAUSE OF ACTION

### Breach of Oral Contract

### Against All Defendants

121.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

122.     As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, orally promised to pay Plaintiff for the treatment provided to Defendants' insureds on the same terms as provided for in the policies between Defendants and their insureds; specifically, payments to Plaintiff equal to approximately 70% of Plaintiff's fully-billed charges (based on 30% co-insurance payable by the patients) .

123.     The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

124.     Plaintiff has performed all duties required of it under the oral contract, except as excused by Defendants' material breaches.

125.     Defendants and each of them, however, breached the oral contract by the conduct alleged herein, including without limitation the withholding of proper claim payments.

126.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants.  Under this Fourth Cause of Action for breach of oral contract, Plaintiff seeks to recover the benefits orally promised, which are equal to approximately 70% of Plaintiff's fully-billed charges.

127.     As a direct and proximate result of Defendants' breach, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

## FIFTH CAUSE OF ACTION

### Promissory Estoppel

### Against All Defendants

128.     Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

129.    As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiff on the same terms as provided for in the policies between Defendants and their insureds; specifically, payments to Plaintiff equal to approximately 70% of Plaintiff's fully-billed charges (based on 30% co-insurance payable by the patients).

130.    The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

131.    Plaintiff relied on Defendants' promises in providing treatment to Defendants' insureds, and Defendants, and each of them, should reasonably have expected to induce Plaintiff's action in providing treatment.

132.    Plaintiff has suffered substantial detriment in reliance upon Defendants' promises in providing treatment to Defendants' insureds, including without limitation the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

133.    As a direct and proximate result of defendants' breach of their promise, Plaintiff is also entitled to statutory and prejudgment interest and attorney's fees against Defendants.

## SIXTH CAUSE OF ACTION

### Quantum Meruit

### Against All Defendants

134.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

135.    Plaintiff, as an ONP, provided treatment services for patients who were insured under insurance policies issued and/or administered by Defendants and each of them, preceded by authorization and verification of benefits by Defendants.

136.    Consistent with the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation, which was

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   fully and clearly understood by Defendants and each of them, that Plaintiff would be compensated

2   for such services.

3        137.    Plaintiff, as an ONP, must often decide on short notice whether and to what extent

4   it can treat a patient.  Requiring such providers to, in effect, make an on-the-spot legal analysis

5   whether the statements made by healthcare plans to authorize treatment and verify benefits

6   constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would

7   jeopardize the safety of patients, and impose an unfair risk on healthcare providers that they would

8   not get paid for providing treatments that are medically necessary.  For this reason, the California

9   Legislature enacted Health & Safety Code section 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider **shall not rescind or modify this authorization after the provider renders the health care service** in good faith and pursuant to the authorization for any reason, including, but not limited to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility….  (Emphasis added.)

16        138.    In addition to reliance upon the trade custom and usage associated with prior

17   authorization and verification of benefits, Plaintiff provided the subject treatment with the

18   expectation that Plaintiff would be compensated for such services based upon the prior course of

19   conduct between Plaintiff and Defendants.

20        139.    Defendants and each of them were fully aware of the dollar amounts charged by

21   Plaintiff for the subject treatment and had previously authorized and verified benefits for such

22   treatment.  Defendants and each of them were also aware that Plaintiff did not provide the subject

23   treatment for free, and that Plaintiff would submit its total billed charges for said services and

24   expect to be compensated.  Defendants and each of them also knew Plaintiff was not a contracted

25   in-network provider who had agreed to accept any pre-negotiated contract rates.  With such

26   knowledge, Defendants and each of them issued payments for the subject treatment to ONPs,

27   including Plaintiff.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

140.     Whereas payment by Defendants and each of them was always sporadic and often inadequate, in or around 2015, and as part of their scheme to decrease their costs of mental health and substance use disorder treatment claims, Defendants, and each of them, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder services, including Plaintiff.

141.     Defendants and each of them were at all times obligated under California law to provide or arrange for the provision of access for their insureds to health care services in a timely manner, and sought to satisfy this duty by providing a network of INPs for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

142.     Defendants are also liable to pay Plaintiff for treating the 74 patients and claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove. California law requires that where health insurance carriers such as Defendants cannot provide their insureds access to the needed healthcare providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its fully-billed charges (since the patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

143.     Upon information and belief, there was a network gap with respect to the 74 patients payments for whom are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the substance abuse treatment and rehabilitation required by those patients.  Indeed, if Defendants objected to their insureds obtaining treatment from an ONP such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an INP?  The only reasonable inference is that there were no such INP's who were in the position to treat the patients at issue.  As a result, those patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   in reliance on Defendants' expected compliance with the applicable California healthcare as it

2   pertains to a "network gap."

3       144.    Defendants and each of them, by words and conduct, requested that Plaintiff

4   provide medically necessary treatment to their insureds, which benefitted Defendants in terms of

5   meeting their legal and contractual obligations to provide or arrange for the provision of access to

6   health care services in a timely manner.

7       145.    As part of verifying benefits and authorizing treatment when necessary, and in

8   multiple communications following admissions and the submission of claims, Defendants, and

9   each of them, knew that Plaintiff was providing services to Defendants' insureds and promised to

10  pay Plaintiff for the treatment and thereafter enjoyed the benefit of Plaintiff providing the services

11  Defendants were obligated to ensure for their insureds.

12      146.    The persons answering calls and corresponding on behalf of Defendants, and each

13  of them, were upon information and belief the agents and employees of Defendants, and each of

14  them, and in doing the things herein alleged were acting within the course and scope of such

15  agency and employment and with the permission and consent of Defendants, and each of them.

16      147.    Plaintiff is entitled to be paid the reasonable and customary fees for the services

17  provided, without regard to the payment provisions in Defendant's policies. and/or the payments

18  owing to Plaintiff under California law based on the existence of a "network gap" as to some or all

19  of the 74 patients at issue.

20      148.    The fair and reasonable value of the non-reimbursed services that Plaintiff provided

21  to Defendants' insureds is in the millions.

22      149.    Defendants and each of them, however, have failed and refused, and continue to

23  refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's services as

24  required by law.

25      150.    As a direct and proximate result of Defendants' failure to pay for services rendered,

26  Plaintiff has suffered general and incidental damages according to proof, and is entitled to

27  statutory and prejudgment interest and attorney's fees against Defendants.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

151. As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

### SEVENTH CAUSE OF ACTION

**Unfair Competition**

**Against All Defendants**

152. Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

153. The conduct of Defendants, and each of them, as alleged herein not only constitutes common law bad faith, but also violates state and federal law, regulations and policies, and thus constitutes unlawful, unfair, and fraudulent business practices in violation of the UCL (Bus. & Prof. Code §§ 17200 et seq.).

154. Plaintiff has suffered injury in fact and has lost money or property as a result of acts of unfair competition by Defendants, and each of them, as alleged herein.

155. Plaintiff is entitled to injunctive relief under the UCL and, as such, Plaintiff seeks a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them, from unjustifiably withholding proper payment of claims.

156. Plaintiff is further entitled to an order appointing a receiver over Defendants, and each of them, and restoring to Plaintiff any money or property that was acquired through the foregoing acts of unfair competition (Cal. Bus. & Prof. Code § 17203).

### PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, and that the Court award the following relief:

1. For compensatory, general and special damages in amounts to be proven at trial;

2. For statutory and prejudgment interest;

3. For costs incurred in connection with this lawsuit;

4. For attorney's fees;

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    5.   For injunctive and equitable relief; and

2    6.   For all other relief the Court deems just and proper.

3

4                    **DEMAND FOR JURY TRIAL**

5    Plaintiff DR Recovery Encinitas, LLC hereby requests a trial by jury for all claims triable

6    by jury.

7    Dated:  September 20, 2019            **CALLAHAN & BLAINE, APLC**

8

9                                 By: _____

10                                     Daniel J. Callahan
                                       Edward Susolik
                                       Richard T. Collins
11                                     Damon D. Eisenbrey
                                 Attorneys for DR Recovery Encinitas, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 37 -
COMPLAINT

61